(Decided May 11th, 1859.)

---

## STATE, use of D. W. MOORE & Co., *vs.* JAMES P. MAYUGH and JACOB E. BELL, Adm'rs of SAMUEL ETNYRE.

By the insolvent law of 1854, ch. 193, it is required, that the estates of insolvents shall be *distributed* by the court, according to the principles of equity, and that the court shall have the same power and control over trustees of insolvents which courts of equity have over trustees appointed by a decree to sell property.

A creditor of the insolvent cannot maintain an action on the trustee's bond, *until after* his claim has been audited, and directed to be paid by the court by an order of distribution, and *notice* to the trustee.

State, use of Moore & Co., *vs.* Mayugh & Bell, Adm'rs of Etnyre.

A *general* demurrer to the *replication* does not mount up to a defect in the *plea* of general performance in not *craving* oyer of the bond; such a defect in the *plea* can only be availed of by a *special* demurrer.

APPEAL from the Circuit Court for Washington County.

*Debt*, brought on the 30th of June 1856, in the name of the State, for the use of the appellants, as creditors of Albert Metz, an insolvent debtor, against the appellees, administrators of Samuel Etnyre, deceased, upon the bond of the said Samuel, as trustee in insolvency, for the benefit of the creditors of said Metz, dated the 24th of July 1854.

The plaintiffs declared upon the bond generally, without assigning breaches. The defendants pleaded general performance without *craving oyer*, and also a special plea, in which oyer was craved, stating, in substance, that since the commencement of this suit, one Webb was duly appointed trustee in place of Etnyre, then deceased, who gave bond and received from the defendants, as administrators of Etnyre, all the assets of Metz returned by him, on his application, to Etnyre, in his lifetime, and all other property of Metz rightfully in the hands of Etnyre, as trustee, and made a report thereof to the court. The plaintiffs demurred to this special plea, which demurrer the court (PERRY, J.) sustained. To the plea of general performance the plaintiffs then filed a replication assigning breaches.

This replication alleges, in substance, that Metz applied for the benefit of the insolvent laws, on the 24th of July 1854, and Etnyre was then appointed trustee for the benefit of his creditors, and received from Metz a conveyance of all his property; that Metz, at the time of his application, was possessed of a large amount of personal estate and effects, and a large amount of debts were owing to him upon accounts, notes and judgments, all of which were assigned and delivered over to Etnyre, as trustee; that Etnyre was ordered and directed by the court, to sell and dispose of the personal property so assigned to him; that Metz, before, and at the time of, his application, was indebted to the plaintiffs in the sum of $377.99, for which, before his application, they had instituted suit, and, after his final discharge, had recovered judgment, subject to such discharge, which sum is still due and owing to them;

State, use of Moore & Co., *vs.* Mayugh & Bell, Adm'rs of Etnyre.

that, of the large amount of property which so came into his possession, as trustee, Etnyre could, in his lifetime, by due diligence, have realized sufficient, after deducting all proper expenses and allowances, to have paid off all the debts of Metz in full, but, regardless of his duty as such trustee, he misapplied, wasted, and by carelessness and neglect permitted, the same to be lost and become valueless, and did not sell the same, as he was ordered, and did not collect or attempt to collect the debts due Metz, as he was in duty bound to do, and altogether failed and neglected to account with the plaintiffs and the other creditors of Metz, concerning the property so received by him; that Etnyre died on the 24th of October 1855, and so did not, in his lifetime, perform and discharge the trust so reposed in him, agreeably to the laws of the land.

To this replication the defendants filed a *general demurrer,* which the court sustained, and gave judgment in their favor for costs. From this judgment the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*R. H. Alvey* for the appellant:

1st. Under the facts alleged and set out in the replication and admitted by the demurrer, it is insisted, that the action is clearly maintainable; that the party for whose use the suit is brought, being a judgment creditor of the insolvent, was competent to put the bond of the deceased trustee in suit, for the *devastavit* and defaults of such trustee committed in his life time, for otherwise the bond would afford no protection and give no remedy to the injured creditor; that under the act of 1854, ch. 193, this case stands by analogy, upon the same footing as the bond of an administrator. 2 *H. & J.*, 41, *M'Mechen vs. Mayor & C. C. of Balto.* 3 *H. & J.*, 534, *M'Mechen vs. Mayor & C. C. of Balto.* 1 *G. & J.*, 231, *Kiersted vs. The State.* 2 *Md. Rep.*, 1, *Glenn vs. Gill.* 3 *Md. Rep.*, 163, *State vs. Williams.* 2 *H. & G.*, 139, *State vs. Blackistone.* 1 *G. & J.*, 270, *Hagthorp vs. Hook.* 7 *G. & J.*, 389, *Boteler vs. Beall.*

2nd. The demurrer to the replication, brings under review the plea of general performance, and requires the court to decide against the party committing the first error in pleading, and because the general performance was pleaded without craving oyer, and setting out a copy of the bond and its condition, that plea is defective, and the court below should have given judgment against the defendants. 1 *G. & J.*, 471, *Murdock vs. Winter.* 4 *G. & J.*, 395, *Morgan vs. Morgan.* 2 *Wms. Saund.*, 408, *note* 2, to the case of *Lord Arlington vs. Merrick.* 5 *Cranch.*, 257, *United States vs. Arthur.* 2 *H. & G.*, 143, *Weems vs. Millard.*

*Hamilton* and *Smith* for the appellees:

The replication assigning breaches, does not aver any audit or account of the estate of the insolvent, made under the order and ratified by the court, and a distribution therein to the equitable plaintiffs, as creditors, and notice of the same to the trustee, nor does it aver any order or proceeding of any kind, as passed or determined by the court in relation to the trust, so as to fix the responsibility of the bond for suit. By the 10th section of the act of 1854, ch. 193, it is provided, "that the estates of insolvents *shall be distributed under the orders* of the court, according to the principles of equity," and by section 12, it is provided, "that the court shall have the same power and control over the trustees under this act, which courts of equity have over trustees appointed by a decree to sell property." Besides these express provisions of this act, the general principles and rules in courts of equity respecting trustees and estates, apply here, and the same proceedings are required to be had in order to justify suit upon the bond. The jurisdiction of the court is complete, both over the estate and the trustee of the insolvent. If this be so, the replication is not sufficient in its averments.

As to trustees in equity, it is decided, that the creditors are known to the trustees only through the medium of the court, where their demands are adjusted by the auditor, and their disputes disposed of by the court, and their rights determined. All this as to the trustees is *res inter alios acta,* and he must

be notified of the result, before an action can be brought upon his bond, and without a notice to the trustee, of an order for distribution and payment *averred* in the proceeding, an action on the bond cannot be maintained. 1 *G. & J.*, 450, *State, use of Oyster, vs. Annan.* 2 *Md. Rep.*, 284, *Scott vs. The State, use of Ducker. Ibid.*, 294, *State, use of Worman vs. Norris, Ex'cr of Dudderar.* 5 *Md. Rep.*, 327, *Nelson vs. Howard.*

Under the act of 1827, ch. 70, the insolvent trustee was obliged to discharge all the duties of the trust; he was to collect debts, sell and convey property, and *distribute* the estate, as directed by the act of 1805, ch. 110, sec. 7, and upon his failure to discharge the trust, his bond might be put in suit at the instance and for the use of any creditor. But under this as well as the other insolvent laws then existing, it was decided, that where the county court had properly assumed jurisdiction over the subject matter of the estate of the insolvent, and was at the time of the institution of the suit, adjudicating upon the claim of the suing creditor, no suit could be maintained by him upon the trustee's bond, as no one but a creditor could sue, and whether he was a creditor, was in a course of determination, and the suit was held to have been prematurely brought. 3 *Md. Rep.*, 163, *State, use of Williams vs. Williams.*

Whatever may have been the right of the creditor, under the act of 1805 or that of 1827, to sue upon the bond *at any time*, these, as well as all other acts on the subject, are repealed by that of 1854, in which there is nothing which authorises a suit to be brought *at any time* upon the bond of the trustee. On the contrary, the whole scope of the act is to put insolvent trustees upon the same footing as trustees in equity, and to place the *estate* of the insolvent within the jurisdiction of the court, to the same extent and in all respects as an estate in a court of equity, subject to the rules, proceedings and principles, which govern in the latter. Before this act it was considered, that an insolvent trustee could settle the estate, pay off debts, and indeed had the entire management thereof, both for settlement and distribution, the law only charging him with the payment of designated

priorities, without the intervention of the court or even rendering an account. Now it is otherwise, and wisely so. Now the fund must be brought into court, and *must be distributed under the order of court.* The trustee is the mere agent. He must obey. He can determine nothing for himself; cannot recognise any one as a creditor, except through the *medium* of the court; cannot pay priorities or claims of any kind only as ordered by the court, and acting under such order, is not responsible for errors in distribution to creditors or otherwise. No preliminary proceeding is required to secure the active jurisdiction of the court over the *estate,* but at once, upon the application, that jurisdiction is vested; and is exclusive as well over the estate as the trustee, and, for its complete management and control, the court possesses all the powers which courts of equity possess over trustees there for the sale of property. Applying, in this view, the principle of the decision, in the case of *State, use of Williams, vs. Williams,* to this case, it is conclusive against the plaintiffs.

In every respect, then, is the insolvent trustee responsible to the order of the court, to bring in the fund, and to account for the same, subject to removal, and the liability of his bond for suit by the court, and its order, in whatever the trustee may have failed in the discharge of his duty. As in courts of equity, the *default* of the trustee must be first ascertained and determined by the court, by proper proceedings had in the matter, before suit can be brought upon the bond. Otherwise the most perplexing difficulties might ensue. The court, at the same time, might be determining one thing in relation to the trust and trustee, whilst a jury in a suit upon the bond, might be determining the same either as to who are creditors, or as to the disposition of the fund, or as to the default or neglect of the trustee.

Le Grand, C. J., delivered the opinion of this court.

This is an action of debt brought by the plaintiff against the administrators of Samuel Etnyre, on his bond, as trustee of Albert Metz, an applicant for the benefit of the insolvent laws. Metz made his application on the 24th day of July 1854, and

on the same day, Etnyre was appointed his trustee, and executed his bond as such. He died on the 24th day of October 1855, and this suit was brought on the 30th day of June 1856.

The plaintiff declared generally, and the defendants pleaded special and general performance. To the special plea, the plaintiff demurred, and to the plea of general performance, replied by assigning breaches. The defendants demurred to the replication. The court sustained the plaintiff's demurrer to defendants' special plea, and the defendants' demurrer to plaintiff's replication.

The replication of the plaintiff neither avers an audit, notice, nor any order of distribution passed by the court.

The first question for our decision is:—whether, since the act of 1854, ch: 193, a suit can be maintained on the bond of a trustee of an insolvent debtor by a creditor of the insolvent before his claim is adjudicated and ordered to be paid, in whole or in part, by the court having cognizance of the trust, and control and direction of the trustee?

By the 10th section of the act of 1854, chapter 193, it is provided, "That the estates of insolvents *shall* be *distributed* under the orders of the *court*, according to the principles of equity, and no creditor shall acquire a lien by *fieri facias*, or attachment, unless the same be levied before the filing of the petition." The 12th section declares, "that the court shall have the *same power* and *control* over the trustees under this act, which courts of *equity* have over trustees appointed by a decree to sell property."

The power and control of the court being the same in both cases, the inquiry arises:—could a creditor of the party whose property was sold by a decree of a court of equity maintain an action on the trustee's bond *before* his claim was audited, and ordered to be paid by the court having control of the trustee? If he could not, neither, then, could a creditor of an insolvent debtor maintain an action against the trustee of the insolvent applicant, *until* after order of distribution and *notice* to trustee.

In the case of *The State, use of Oyster, vs. Annan,* 1 *Gill & Johnson,* 450, it was held, that the bond of a trustee ap-

48    v. 13.

pointed by the chancellor to sell the real estate of a deceased person, for the payment of his debts, is not liable to be put in suit, after the trustee has sold the deceased's property, and received the money therefor, upon the order of the chancellor distributing such proceeds among the creditors, *without* notice to the trustee of such distribution. In *Scott survivor of Belt, vs. The State,* 2 *Md. Rep.,* 284, it was said, that a suit could not be sustained upon a trustee's bond where the replication, after averring that the auditor had stated an account which had been duly confirmed by the court, averred, "that the trustee having been frequently called upon by the plaintiff for the *amount* of the audit aforesaid, was requested by the plaintiff to pay the same, as he was bound to do, but the said trustee refused," &c. &c. And in *Williams vs. Williams,* 3 *Md. Rep.,* 163, it was again declared, that no one but a *creditor* could sue the trustee's bond, and, that *until* the tribunal having authority to do so, determined in law, no such claim existed. See *Boteler & Belt, vs. State, use of Chew,* 8 *Gill & Johnson,* 359. *Brooks vs. Brooke, et al.* 12 *Gill & Johnson,* 306, 319.

Notwithstanding the above, the plaintiff contends, that although the replication be defective the demurrer carries the count up to the first error in the pleadings, which, it is alleged, consists in the fact that the plea of general performance does not crave oyer, and, therefore, the judgment ought to have been in favor of the plaintiff, and, in support of this view, the case of the *United States, vs. Arthur,* 5 *Cranch,* 257, is relied upon. In that case the demurrer was *special,* and not, as in this, general. The defect in the plea complained of, can only be availed of by a *special* demurrer. See *Statute of* 4 *Anne,* chapter 14, and Act of Assembly of Maryland of 1763, chapter 23, and *Shafer, vs. Stonebraker,* 4 *Gill & Johns.,* 353.

*Judgment affirmed.*

(Decided May 12th, 1859.)