State, use of Dorsey *vs.* Banks, *et al.*

(Decided 7th June, 1892.)

STATE, use of MARGARET W. DORSEY, widow *vs.* ANDREW BANKS, HENRY A. PARR, and others.

*Action on Trustee's bond—Principal and Surety—Res judicata—Extent of Surety's liability—Trustee's Commissions—Auditor's account—Prayers and Instructions—Question of Law and Fact—Practice in Court of Appeals.*

No form of adjudication against a principal, can preclude a surety from showing that the breach of duty upon which that adjudication was founded, occurred prior to the date of the bond, and is not within the terms of the surety's contract, if the bond be not retroactive.

The liability of the surety is one of strict contract, which cannot be extended by implication, nor enlarged beyond the limits which its words fairly import.

The condition of a bond given by B. as principal, with P. and others as sureties, was in these words : "Now, the condition of the above obligation is such that, if the above bounden B. do and shall well and faithfully perform the trust reposed in him by said will, or that may be reposed in him by any future decree or order in the premises, then the above obligation

State, use of Dorsey *vs.* Banks, *et al.*

to be void," &c. The record in the equity proceedings in which the order was passed for the execution of the bond, as it stood when the bond was given, showed that the trustee had accounted in full up to that date for all the trust funds which had come to his hands, and that there was therefore no antecedent default to which the bond could be made to apply. But subsequently, after the trustee had relinquished the trust, two accounts were stated by the auditor and ratified by the Court, wherein by charging the trustee with items which he had inadvertently omitted to·debit himself with before he gave bond, and which sums by reason of·his failure in business he had lost before giving bond, he was made to appear as in default in not having paid over all the income he had received. In an action on said bond it was HELD:

1st. That the language used in the condition of the bond was prospective, relating to no past default, liability, or duty, and the sureties assumed under it no obligation with respect to any acts of the trustee except such as might be done after the date of the bond.

2nd. That the sureties therefore were not bound for the default committed and fully consummated before they had executed the bond.

3rd. That they would have been answerable even though the funds had been collected prior to the date of the bond, if he had had those funds in hand at the time the bond was delivered, and had misapplied them afterwards.

4th. That the allowance of commissions to the trustee was a matter wholly within the jurisdiction of the equity Court, and upon the trial of this case at law the Court was absolutely bound by what the equity Court had done in this respect.

By an auditor's account in said equity proceedings, it appeared that the trustee had been allowed for commissions upon certain collections of income made by him, the sum of $1105.70, from which was deducted the sum of $534.60, for "counsel fees, testimony, Court costs, &c; itemized in statement M. W. D. No. 2, herewith filed, properly chargeable to the trustee," leaving a balance of $571.10. which latter amount only was charged as a debit against the income. By this mode of stating the account, the net amount of the income was shown to be $534.60 in excess of what it would have been, if the gross income had been debited with the entire sum of $1105.70 allowed for commissions. HELD:

1st. That this seizure by the Court of a portion of the commissions allowed the trustee, and their application to the payment of costs and expenses charged against him, did not deprive the sureties of the right to insist that the said portion should, even after its appropriation, be treated as part of those commissions.

2nd. That, treated in this way, it properly formed no part of the income payable to the *cestui que trust*, and therefore ought to have been deducted from the amount due to her.

Where a prayer asks for a verdict for a specific sum of money, based upon items which do not amount to that sum, the difference in amount though it be small, will justify the rejection of the prayer.

Where a case is tried before the Court without the intervention of a jury, the amount of the verdict is a finding of fact by the Court sitting as a jury, and its correctness cannot be investigated on appeal.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two following prayers:

1. The plaintiff prays the Court to rule as a matter of law, that the Circuit Court of Baltimore City having upon the application of the defendant, Andrew Banks, as trustee, assumed jurisdiction of his administration of the trusts of the will of Daniel B. Banks, deceased, the allowance or disallowance of commissions to said trustee, and the rate thereof if any allowed to him, were matters entirely within the discretion of said Circuit Court, and if this Court finds that (after giving to the defendants credit for such charges against the trustee in auditor's accounts "R" and "S" referred to in the declaration, and offered in evidence in this case with the exceptions thereto, as would be properly excluded under

this Court's ruling upon the demurrer of the plaintiff to the defendants' amended pleas) there is due and payable by the face of said accounts by said Andrew Banks, trustee, to the equitable plaintiff, the sum of $762.92, then the defendants are not entitled to any deduction therefrom by reason of the failure of said Circuit Court to allow further or larger commissions than it did in fact by said accounts allow, and especially the defendants are not entitled as claimed by them to deduction therefrom for the sum of $534.60, because the commissions were to that extent by reason of the trustee's conduct, as found by said Circuit Court, less than if they had been allowed at the rate observed by the Court in former accounts, and the verdict should be in favor of the plaintiff against the defendants for the sum of $762.92.

2. The plaintiff prays the Court to rule as a matter of law, that the Circuit Court of Baltimore City, having overruled the exceptions of Andrew Banks, trustee, to the auditor's accounts "R" and "S," and also his exceptions to the testimony adduced in said Circuit Court by the equitable plaintiff in support thereof, (all of which exceptions and accounts are offered in evidence in this case,) and having ratified said accounts, said Circuit Court did determine that the earlier auditor's accounts of income, based upon former reports of said trustee, were not final and complete accountings between said trustee and the equitable plaintiff, the plaintiff is therefore, by reason of the statement and ratification of said earlier auditor's accounts, not estopped or prevented from recovering from the defendants any trust income included in said accounts "R" and "S," which the Court may find that the trustee had collected prior to the delivery of said bond sued on, and which had not been ascertained to be due to the equitable plaintiff by earlier auditor's accounts, because the same was not included in the reports of income returned by said trustee to said Circuit Court.

State, use of Dorsey *vs.* Banks, *et al.*

The Court (STEWART, J.) refused said prayers, and the verdict and judgment being in favor of the plaintiff for less than the amount claimed, it appealed.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*George Whitelock,* (with whom was *Samuel D. Schmucker,* on the brief,) for the appellant.

*Richard S. Culbreth,* and *John Prentiss Poe, Attorney-General,* (with whom was *Charles R. Goodwin,* on the brief,) for the appellees.

McSHERRY, J., delivered the opinion of the Court.

Daniel B. Banks died in 1875, leaving a last will and testament, whereby he devised portions of his estate, including one-third of the residuum, to Andrew Banks, in trust to collect the income thereof, and after defraying proper charges, to pay the net income to the testator's daughter, Margaret W. Dorsey, during her life. He further devised the *corpus* of this trust estate to her children after her death, with a limitation over in default of issue. In October of the same year the trustee filed a bill in the Circuit Court of Baltimore City against all of the *cestuis que trust* under the will, for the administration of the trusts by the direction of the Court; and in 1877 a decree was passed whereby the Court assumed jurisdiction of the trusts, and directed the trustee to account for the trust funds which had then been received by him, and thereafter to account regularly, according to the usual course of the Court. Some ten years later proceedings were instituted to have the trustee file reports of the principal and income of the trust estate, and these resulted in such reports being made, upon which auditor's accounts were based, and these accounts

were subsequently ratified. The amount of the income found to be due to the *cestui que trust* by these accounts was paid to her, or paid into Court for her. In 1888, the Court, upon application passed an order requiring the trustee to give bond in the penalty of fifty thousand dollars for the faithful discharge of his duties, and the bond now in suit was accordingly executed, and delivered on the sixteenth day of April, in that year. Prior to that date the trustee had acted without bond. On April, the twenty-fourth, 1890, Mr. Banks having become embarrassed financially, filed his final report and relinquished the trust; whereupon new trustees were appointed in his place. A year later two accounts were stated by the auditor; one, based upon the several reports previously filed by Mr. Banks, showed that he still owed the *cestui que trust* four hundred and fifty-eight dollars and four cents as the balance of net income due to her; and the other, founded upon sundry omissions of debits and credits in the trustee's former reports, exhibited a balance of fifteen hundred and nine dollars and seventy-four cents of additional income as due Mrs. Dorsey. To recover these sums the pending action was brought against Mr. Banks and the sureties on his bond. To the declaration which assigned the non-payment of these two sums of money as the breach of the bond, the defendants other than Banks pleaded that the income mentioned in the auditor's accounts referred to in the declaration— the two accounts just alluded to—was not income belonging to said Margaret W. Dorsey which had accrued, subsequent to the delivery of said bond; nor was it income belonging to said Margaret which was in fact collected or received by the said trustee subsequent to the delivery of said bond, but, "on the contrary, said items of income had been collected by said trustee before the delivery of said bond in the several years covered by said reports, whereon the auditor's accounts had been stated, and the

same finally ratified and confirmed as aforesaid, but which items had been omitted from said reports through the inadvertence of said trustee, and the fact of such omission was not discovered until long after the delivery of said bond, and the relinquishment of said trust by him; *that, at the time of the delivery of said bond by said trustee, said items of income were not in his hands, the same having been previously used by him,* he having, through business reverses become insolvent." They further pleaded that they delivered the bond sued on in the full belief that all the income of the said Margaret W. Dorsey which had been collected by the trustee had been fully reported and accounted for and paid over to the *cestui que trust;* and that for this belief they relied on the ratification of the auditor's reports as conclusive evidence that the same were full and complete reports of income for the years which they professed to cover. The plaintiff demurred to these pleas; the Superior Court of Baltimore overruled the demurrer; the plaintiff then filed a traverse of each plea, upon which issue was joined, and the Court, sitting as a jury, found a verdict for the plaintiff for two hundred and forty-eight dollars and thirty-six cents, upon which judgment was duly entered. From that judgment the plaintiff has taken this appeal. The record contains one bill of exception, which brings up for review the rulings of the Court on two prayers, submitted by the plaintiff, and rejected by the Court. The defendant, Banks, pleaded his application for the benefit of the insolvent laws.

The principal question in controversy arises on the demurrer; and that question, as the statement we have made of the pleadings shows, is whether the sureties are liable for defaults committed by the trustee prior to the date of his giving bond for the faithful discharge of his trust. It has been insisted very earnestly by the appellant's counsel that the final ratification of the

auditor's reports referred to in the declaration was, on the authority of *Butler and Belt vs. State, use of Contee and Bowie,* 5 *Gill & J.,* 511, and *Taylor and Bradford vs. State, use of Miller,* 73 *Md.,* 208, an adjudication *in rem,* or in the nature of an adjudication *in rem* conclusively binding on the trustee and his sureties, and finally ascertaining and fixing their liability: That the sureties were not therefore at liberty to question the correctness of the order of ratification, and were confined to the inquiry whether such an order had been passed, and whether the money found to be due by the trustee thereunder had been paid. The doctrine thus invoked would be a complete answer to the pleas, if the case fell within the principle which controlled the decisions just referred to; but the case at bar involves this additional consideration, that the default for which the suit was brought occurred, according to the averments of the pleas and the admission of the demurrer, *before* the sureties undertook to be responsible for the trustee's fidelity, and this obligation is, on its face, not retrospective in its terms. What was said in the cases cited as to the conclusive character of an order of ratification of an audit had reference to cases where the default of the trustee was within the terms of the sureties' contract; but no form of adjudication against a principal can preclude a surety from showing that the breach of duty upon which that adjudication is founded occurred *prior* to the date of the bond, and is not within the terms of the surety's contract, if the bond be not retroactive. And this is so because the liability of the surety is one of strict contract, which cannot be extended by implication, nor enlarged beyond the limits which its words fairly import. This is a fundamental principle which has become axiomatic law, and we need make no references to adjudged cases to support it.

We are therefore brought to the bond itself, filed with the declaration and forming part of the pleadings. Its

condition is in these words: "now the condition of the above obligation is such that, if the above bounden Andrew Banks do and shall well and faithfully perform the trust reposed in him by said will, or that may be reposed in him by any future decree or order in the premises, then the above obligation to be void," &c. This language is prospective; it relates to no *past* default, liability, or duty, and the sureties assumed under it no obligation with respect to any acts of the trustee except such as might be done after the date of the bond. The record in the equity case, as it stood when the bond was given, in fact showed that the trustee had accounted in full up to that date for all the trust funds which had come to his hands; and that there was, therefore, no antecedent default to which the bond could be made to apply. But aside from this circumstance which is averred in the pleas and admitted by the demurrer, the legal effect of the bond was not retroactive. *Farrar & Brown vs. United States*, 5 *Peters*, 389; *United States vs. Boyd, et al.*, 15 *Peters*, 208; *Same Case*, 5 *How.*, 29; *Rochester vs. Randall*, 105 *Mass.*, 295. If it had been intended to cover past derelictions of duty, it should have been made retrospective in its language. Now, the pleas allege that after Banks had relinquished the trust and after new trustees had been appointed, two audits were stated, wherein, by charging the original trustee with items which he had inadvertently omitted to debit himself with before he gave bond, and which sums by reason of his failure in business he had lost before giving bond, he was made to appear as in default in not having paid over all the income he had received; and that these sums are those for the recovery of which the sureties were sued. These averments of the pleas the demurrer admitted, and thus the distinct question was presented as to whether the sureties could be held for a default which they did not guarantee against

—a default, committed and fully consummatde long before they executed the bond. For the reasons we have given, and upon the authorities to which we have above referred, we are of opinion that the Superior Court was right in holding by its ruling on the demurrer that the sureties were not bound for such a default.

The second prayer asked the Court to declare that the sureties were liable for the income collected by Banks before he gave bond, and which had not been ascertained to be due the equitable plaintiff by auditor's accounts as stated earlier. This prayer was properly rejected, for the same reasons that the demurrer was overruled. It sought to hold the sureties liable, notwithstanding Banks had lost the funds before the bond was given. It is true they would have been answerable even though the funds had been collected prior to the date of the bond, if he had had those funds in hand at the time the bond was delivered, and had misapplied them afterwards; *Bruce vs. U. S.*, 17 *How.*, 437; but there was no evidence to support that hypothesis.

The first prayer involves an interpretation of auditor's account R. The Superior Court on the trial allowed the sureties a credit of $534.60 on the balance claimed against them. This sum the sureties insist was part of the commissions to which Banks was entitled under the order passed in 1877, when the Circuit Court assumed jurisdiction of the trust estate; whereas, the equitable plaintiff contends that this sum of $534.60 forms no part of the commissions at all. The allowance of commissions was a matter wholly within the jurisdiction of the equity Court, and upon the trial of this case at law the Superior Court was absolutely bound by what the other Court had done in this respect. But what had the Court of equity done? The answer must be found in the auditor's report. In the charges against the income in account R, occurs the following item:

State, use of Dorsey *vs.* Banks, *et al.*

"To the trustee for his commissions at 6
    per cent. on income collected per
    contra........................................ $1,105.70
Less counsel fees, testimony, Court
    costs, &c., itemized in statement
    M. W. D. No. 2, herewith filed,
    properly chargeable to the trustee..    534.60"

    And the difference........................    $571.10
is carried out in the column of debits.   By this mode of
stating the account full commissions were allowed, but
part of the gross sum so allowed was applied to the pay-
ment of certain costs and fees which the trustee's con-
duct prior to his having given bond induced the auditor
and the Court to conclude ought to be paid by him, and
not by the trust estate.   Accordingly these items were
deducted from his commissions, and instead of the total
of the commissions actually allowed being carried out,
only the difference between that total and the deductions
just specified was entered in the column of debits;
whereby, though full commissions were actually allowed,
only a part of the amount was charged against the in-
come.   As a result of this, the apparent balance due by
the trustee was made just that much larger, although
the five hundred and thirty-four dollars and sixty cents
charged against the trustee, and made payable out of
his one thousand one hundred and five dollars and
seventy cents of commissions, were in fact paid, not to
him, but to others for him.   As the trustee did not
actually get that portion of his commissions in hand,
this was merely another way of paying part of them—
the two sums, $571.10 charged in the audit and the
$534.60 retained to pay costs, fees, &c., as debts due by
Banks, aggregate precisely the total of six per cent.
commissions allowed in the audit.   If the sureties are
obliged to make up to the income account, as contended

by the appellant, this $534.60, then *they* pay the debts
due by the trustee, which debts were specifically decreed
to be paid, not by them, nor by him personally, but out
of the commissions allowed to him; and the trustee gets
not six per cent. commissions, allowed by the order of
the Court, but only a fraction over three per cent.    This
would materially modify the face of the auditor's report.
As we understand that report, the full commissions
were allowed, but a portion of them—nearly a half—
was seized upon by the Court to pay costs and expenses
charged against the trustee.    When applied to the pay-
ment of these charges, it was *his* money thus applied,
and the fund did not lose its identity as commissions;
and having been appropriated, as it was, the sureties
were not thereby deprived of the right to insist that it
should, even after its appropriation, be treated as part
of those commissions.    Treating it in this way, it prop-
erly formed no part of the income payable to the *cestui
que trust*, and therefore ought to have been deducted
from the amount due to her.    It can make no possible
difference what was done with the commissions after
they had been allowed.    When allowed, they were pay-
able out of the income, and, to the extent of their
allowance, properly diminished the amount of income
payable to the *cestui que trust*.    And this would be so
even though every dollar of them, instead of only a
half, had been applied by direction of the Court, to the
payment of costs and fees charged against the trustee.
If the whole of the commissions had been thus applied,
the net income payable to the *cestui que trust* would not
have been a single cent larger than if all the commis-
sions had been paid in cash into the hands of the trus-
tee.    The payment of his obligations out of a part of
his commissions could not, upon any principle of correct
accounting, swell the net income.    The *net* income is
that which remains after deducting proper costs, ex-

penses, and commissions, and it can not therefore include a part of the very items which must be deducted in order to produce it. Hence the moment it appears that full commissions have been allowed—as it does appear in this audit—it must be conceded that those commissions form no part of the net income at all, and do not belong to the *cestui que trust.* Had the purpose been to reduce the percentage of the trustee's commissions, and not to pay these costs and fees out of the full commissions, a different mode of stating the account must necessarily have been pursued.

But there is another objection to the prayer: It specifically asks for the rendition of a verdict for $762.92. This sum purports to be made up of the $534.60, and the net amount of income collected by the trustee after the delivery of his bond, but inadvertently omitted to be accounted for by him, as already stated. An examination, however, of the items of collection and expenditure, not previously accounted for during the period intervening between the date of the bond, and the retirement of the trustee fails to show such a net balance as will, when added to the $534.60 make the amount $762.92 claimed in the prayer. The difference, it is true, is not large, but it is sufficient, as the prayer is framed, to cause the prayer to be inaccurate, even on the theory of the appellant; and this alone, would have been enough to have warranted its rejection.

Whether the amount ascertained by the verdict was right or not is not a question open for inquiry on this appeal—it was a finding of fact by the Court sitting as a jury, and its correctness cannot be investigated in this Court.

Finding no errors in the rulings excepted to, the judgment of the Superior Court will be affirmed.

*Judgment affirmed, with costs.*

(Decided 7th June, 1892.)