# EMPLOYERS' LIABILITY ASSURANCE CORPORATION v. STATE OF MARYLAND, For the Use of William H. Hudgins, Trustee.

## [No. 25, April Term, 1932.]

*Decided June 20th, 1932.*

The cause was argued before BOND, C. J., URNER, AD-KINS, DIGGES, PARKE, and SLOAN, JJ.

*James Morfit Mullen,* with whom was *John H. Filler* on the brief, for the appellant.

*G. C. A. Anderson,* with whom was *Howard B. Stocksdale* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The bill of complaint of the State of Maryland, for the use of William H. Hudgins, trustee in the case of *O. Parker Baker, Assignee, v. Amelia Klotz and Louis Klotz,* against the Employers' Liability Assurance Company and the Fidelity & Deposit Company of Maryland, was filed to enforce an alleged liability of each of the defendant corporations as the separate sureties on the two bonds of O. Parker Baker, as assignee of a real estate mortgage from Amelia Klotz and Lewis Klotz, her husband, to Eleze F. Crawford. The allegations of the bill of complaint were held on demurrer to be legally sufficient to raise an equity in the plaintiff to prosecute a suit against the sureties of the former trustee on his bonds for his failure to account for and pay over trust funds; and the ruling of the chancellor was affirmed by this tribunal on the appeal of *Employers' Liability Assurance Corp. v. State, 'use of Hudgins, Trustee,* 161 Md. 103, 155 A. 324. After the remand, the cause being at issue, evidence was taken, the parties heard, and the chancellor decreed that the two sureties were liable for the default of the assignee in proportion to the respective principal amounts of each bond. The amount of the assignee's default was $5,186.16, with interest, which, after credits, was apportioned as of January 8th, 1932, the date of the decree. The Fidelity & Deposit Company was a surety on the original bond of $2,500, and paid its portion. The Employers' Liability Assurance Company was the surety on the second bond of $5,000, but declined to pay its share of the default, or $3,740.24, with interest from the date of the decree, and took this appeal.

There is no controversy on the facts. So far as it is necessary to state them, O. Parker Baker, an attorney at law, was the assignee of a mortgage on real estate. He began the proceedings to foreclose, gave bond in the penalty of $2,500, with the Fidelity & Deposit Company as surety, sold the land, and reported a sale of the mortgaged land to his wife for $4,100; and on July 12th, 1927, secured the ratification of the sale and a reference to the auditor to state an account. The auditor's account was not filed until August 21st, 1928, and thereupon the First Mortgage Bond Homestead Association filed exceptions to the account on the ground that Baker, who was then its treasurer and general counsel, had purchased the mortgage with $1,800 of the association's money, and had taken the assignment in his own name, and as such purporting assignee had caused the distribution of $1,998 to be made to him in the audit, and a residue of $1,425.28 to a certain Nellie J. Gibson, by virtue of her being the then owner of the mortgaged premises, when, because of an agreement with her, the exceptant was entitled to this fund. The matter dragged without action until June 13th, 1929, when Nellie J. Gibson obtained an order *nisi* of the chancellor requiring Baker to show cause why he should not pay into the registry of the court all the moneys he had received on account of the sale of the mortgaged premises. As a result of this order, the assignee, the exceptant, and the putative purchaser filed a stipulation in open court that the only sale made by the assignee of the mortgaged property was on July 30th, 1928, to one Louis T. Zbinder for $5,300, which should be accounted for by the assignee in the mortgage foreclosure proceedings. On the same day the parties were heard, and immediately thereafter the chancellor passed an order requiring the assignee to increase his bond, with corporate surety, to the amount of $5,300, and to file the new bond in the cause on or before the 10th of July, 1929. The chancellor set forth in the order that his action was based upon the disclosure that the actual purchase price was $5,300 and that the first audit was thereby falsified; and directed

the cause to be again referred to the auditor to state an account surcharging the assignee accordingly.

The bond was executed by the assignee, with the Employers' Liability Assurance Corporation, Limited, as the surety, on July 2nd, 1929, and filed in the cause on July 8th, 1929. The bond contains recitals which make certain that it was given by Baker, as the assignee of the mortgage mentioned, in an entitled foreclosure proceedings begun, in the local court where the land was situated, by the assignee against the mortgagors for the sale of the property mortgaged under the power conferred by the deed of mortgage. The surety, therefore, knew the purpose, nature, and effect of the bond, and either knew or was charged with knowledge of the equity proceedings wherein the additional bond was required.

A new audit was filed on October 16th, 1929, and exceptions were interposed which were pending when the assignee died, on December 28th, 1929. The chancellor, on May 29th, 1930, appointed William H. Hudgins trustee in the place and stead of the dead assignee. On March 6th, 1930, the chancellor passed his decree, in which he decided that the dead assignee's conduct had disentitled him to $531.05 that had been allowed him as commissions; and directed that this 'sum should be held subject to the chancellor's further order, but that the second audit should be ratified and confirmed in all other respects.

The substituted trustee made demand of the personal representative of the assignee for the payment of the trust funds, filed the claim therefor against the decedent's estate, and received a final dividend of $259.31. On demand, the Fidelity & Deposit Company of Maryland, the surety on the assignee's bond of $2,500, paid to the substituted trustee $1,662.16, on June 29th, 1930, as its proportionate share of the trust fund, with the understanding that it would meet any further liability to the extent of the principal amount of the bond on which it is surety.

The Employers' Liability Assurance Corporation, Limited, denied all liability under the bond of $5,300, upon the

ground that, before the delivery of the bond, the assignee had received and used for his own personal purposes the purchase money of the mortgaged premises, which the assignee had sold under the power of sale contained in the mortgage deed. The soundness of this contention depends upon the meaning of the condition of the bond that the "assignee do and shall well and faithfully perform the trust reposed in him by the powers contained in said mortgage and his duty under the law as such assignee or that may be reposed in him by any future order or decree of said court in the premises". The meaning of this condition is to be ascertained by reference to the terms of the mortgage deed and the statute. The first provides that the proceeds of sale made by the assignee under the power should be applied by the assignee: "First, to the payment of all expenses incident to such sale, including an appearance fee and a commission to the party making the sale of said property equal to the commission allowed trustees for making sale of property by virtue of a decree of a court having equity jurisdiction in the State of Maryland; secondly, to the payment of all claims of the said mortgagee, her personal representatives and assigns under this mortgage, whether the same shall have then matured or not, and the surplus (if any there be) shall be paid to the said mortgagors, their personal representatives or assigns or to whoever may be entitled to the same." The statutory law is that the bond, which must be filed before a sale may be made under the power contained in the mortgage shall be "to abide by and fulfill any order or decree which shall be made by any court of equity in relation to the sale of such mortgaged property or the proceeds thereof; and such bond shall be and remain as an indemnity to and for the security of all persons interested in such mortgaged property or the proceeds thereof and be subject to be sued as other bonds taken in the name of the State and subject to the same limitations and disabilities as such other bonds." Code, art. 66, secs. 7, 6.

After a bond had been approved and filed in what developed to be an insufficient amount, a sale had been reported,

and jurisdiction assumed by the court of equity, the second bond, now under consideration, was required by the chancellor, and given by the assignee, because of the inadequacy of the principal amount of the first bond, and there can be no question of the duty and power of the chancellor thus to act. Code, art. 66, secs. 6-13; *Warehime v. Carroll County Bldg. Assn.,* 44 Md. 516; *Cockey v. Cole,* 28 Md. 283; *Gaither v. Tolson,* 84 Md. 641, 36 A. 449; *Warfield v. Dorsey,* 39 Md. 302; *Hebb v. Mason,* 143 Md. 353, 122 A. 318; *Bilbrey v. Strahorn,* 153 Md. 494, 138 A. 343. The chancellor's power to increase the penalty of the bond to such an amount as may seem proper upon cause thereof appearing or being shown is confirmed by statute. Code, art. 16, sec. 248; *Condon v. Updegraf,* 117 Md. 75, 83 A. 145; *Employers' Liability Assurance Corp. v. State, supra.*

The proof having established the death of the assignee and the appointment of a substituted trustee, whom the chancellor authorized to collect all moneys due in the proceedings, and to account for and disburse the same in regular course in the same manner and to the same extent as the assignee of the mortgage was authorized to do; an account wherein the original trustee or assignee was charged with the $5,300 purchase money and credited with his allowance, and distribution made of the residue among the parties en titled; a final ratification of this account; and then, pursuant to his duty and authorization, a demand upon the personal representative of the dead assignee, and a failure of the personal representative of the assignee to pay anything but a small dividend on an admitted obligation as trustee— there was evidence of a breach of the covenant, which, *prima facie,* entitled the substituted trustee to recover on the bond. Code, art. 16, sec. 249, and *supra.* If the defending surety be exempt from liability, it must be due to facts which limit the scope of the plain terms in which the surety's obligation is fixed by the written instrument and the statute.

The argument that the receipt by the assignee of the trust fund and his use of it in his own affairs before the execution and delivery of the additional bond relieved the

surety of any obligation under the bond is based upon a misconception of the nature of the contractual relation and obligations assumed by the assignee or trustee and his surety. The willful and fraudulent appropriation by a trustee for his individual use of the moneys held by him in trust is at once a breach of trust, for which, upon proper procedure, the trustee may be removed, and an embezzlement, for which he becomes personally subject to prosecution and punishment by the criminal law. The wrongful act of the trustee is punishable at criminal law, notwithstanding the wrongdoer may have made full restitution before the beginning of his prosecution. His civil liability and that of his surety for his breach of duty ends, however, if, at any time between the wrongful appropriation of the money or trust funds and the bringing of an action on the bond, the trustee should make full restitution, so that no loss or injury resulted from his breach as a fiduciary. *Ringgold v. Ringgold,* 1 H. & G. 11, 26, 70, 71; *Ricketts v. Montgomery,* 15 Md. 46, 53; *Welbourn v. Kleinle,* 92 Md. 114, 129, 48 A. 81; *Brooks v. Brooke,* 12 G. & J. 306, 319. Consequently, the mere diversion of money to the trustee's use would not create either a legal or equitable cause of action on the bond. Something more is required, because instances occur of imprudent or improper deviations from sound fiduciary conduct by a trustee of unquestioned integrity and motive, where these deviations, while not approved and at the risk of the trustee, do not result in loss to the trust or its beneficiaries, nor justify a removal of the fiduciary. *Perry on Trusts* (7th Ed.), sec. 276, p. 493 and note 93, secs. 279, 427-429, 443-447, 468. Again, the covenants of the bond are to protect the corpus and its product from loss. Although the fiduciary may be guilty of breaches of trust which would cause his removal, yet, if no loss be thereby sustained, there would be no breach within the contemplation of the bond, whose language is translated in monetary terms and confined in its operation to breaches resulting in a pecuniary loss for which an account may be had. For these reasons, the general rule is that before a trustee may be said to be in actionable default,

with respect either to the corpus of his trust or to its yield, within the contemplation of his bond as fiduciary, the breach of duty must generally be shown or proved by proceedings in equity and become the subject-matter of an order or decree in an accounting there rendered and had. *Infra.* Since the obligations on the bond are in contract, the remedy on the bond, after the account taken in equity, is at law, but not until a demand has been made by a proper party upon the trustee and there has been a refusal or failure on his part to comply. *State v. Annan,* 1 G. & J. 450; *Scott v. State,* 2 Md. 284; *State v. Mayugh,* 13 Md. 371, 377, 378; *State v. Digges,* 21 Md. 240, 242, 243; *State v. Banks,* 76 Md. 136, 141, 24 A. 415; *National Surety Co. v. State,* 152 Md. 71, 73, 79, 80, 136 A. 274. The exceptions to this general rule are limited to those instances where an action at law either does not lie against the sureties or is an inadequate remedy because of some fraud, accident, mistake, or other ground of equitable cognizance. Under these circumstances and to prevent a failure of justice, equity will assume jurisdiction and enforce the obligation of the bond according to its obvious meaning and design, as, by way of illustration, where the demand cannot be made because of the death of the trustee without the completion of the trust and the ascertainment of his indebtedness by an audit (*Dent v. Maddox,* 4 Md. 522, 529; *Thruston v. Blackiston,* 36 Md. 501, 503, 508; *Gorsuch v. Briscoe,* 56 Md. 573, 577), or where the trustee's indebtedness is determined by a ratified account which, however, does not make a complete distribution of the trust fund, and no demand can be made because of the trustee's intervening death (*Employers' Liability Assurance Corp. v. State,* 161 Md. 103, 155 A. 324), or where the trustee is delinquent, has wasted the estate, and dies insolvent, so that a proper party in interest could not put himself in a position to proceed at law by obtaining an award in equity against the trustee, accompanied with notice and demand of payment. *Brooks v. Brooke,* 12 G. & J. 306, 308, 318-321.

These cases exemplify the point that the breach of duty contemplated by the obligors was a refusal or failure of the

trustee to pay, upon proper demand, according to an accounting in equity. *Brooks v. Brooke, supra.* The circumstance that, before the delivery of the second bond, the assignee had used the full purchase money in his own affairs, was a breach of his duty as trustee, but it was not a final misappropriation of trust funds such as to make it a consummated default within the meaning of the contract, since, between the delivery of the bond and the statement of the account, the assignee would have had a period in which to make restitution, and pay out the trust fund in accordance with the audit after demand made. The surety, therefore, must be charged with having this knowledge, and, when he entered into a bond whose language explicitly bound him to a prospective obligation, without any express exemption in the event the assignee did not have the money in hand because of a previous use for his personal benefit or other unauthorized disposition, the surety cannot escape the risk of his contract, which obviously was to protect the parties in interest against any loss, however caused by the assignee, at the time fixed for the payment of the fund. The chancellor rightfully assumed, at the time the penalty of the bond was increased, and the new bond was executed, that the trust fund, intact and available, was in the possession of the trustee to meet the obligations imposed by the trust. *Comegys v. State,* 10 G. & J. 175. Inasmuch as there is no term in the contract limiting the obligation to defaults occurring with respect to any point of time, the surety is liable under the clear and definite words and context of the bond, when read in association with the statute, for the prospective and consummated default on the part of the trustee in not paying out the purchase money received to the assignee or owner of the mortgage debt, to the owner of the equity of redemption and to those otherwise entitled, according to the duly ratified second account of the auditor distributing this fund among the parties entitled. *Ward v. Schlosser,* 111 Md. 528, 531, 75 A. 116; *Thruston v. Devecmon,* 30 Md 310; *Trayhern v. Colburn,* 66 Md. 278, 7 A. 459; *Rogers, Brown & Co. v. Bank,* 93 Md. 613, 49 A.

843; *Marine Bank v. Heller,* 94 Md. 213, 50 A. 521; *Taylor v. State,* 73 Md. 221, 20 A. 914, 11 L. R. A. 852; *Parr v. State,* 71 Md. 220, 234, 17 A. 1029; *Baldwin v. State,* 89 Md. 587, 589, 43 A. 857.

The effect of the ratification by the chancellor of the account in which the purchase price of $5,300 is charged and distributed is thus stated in *State v. Graham,* 115 Md. 522, 523, 81 A. 31, 32: "When an audit disposing of trust money has been ratified and the trustee has been ordered to pay out the funds as audited, the order as to him and his sureties has the force and effect of an adjudication *in rem,* and, if he fails to make payment and his bond is put in suit, there are but two questions open for the jury, and these are: Has such an order been passed? Has the money been paid? The court's order ratifying the audit is absolutely binding on the trustee and his sureties, unless reversed on appeal to this court, or revoked on proper proceedings in the court by which it was passed."

This rule is, however, subject to the qualification that the sureties on a bond are not liable for a default committed and fully consummated before the execution of the bond. This exception is recognized in *State v. Banks,* 76 Md. 136, 24 A. 415, 416, and the surety greatly relies on that decision. In our judgment, the facts on this record do not bring the appeal at bar within the principle applied in that case. The other view was urged with conviction, and the reasons for our conclusion should be given. *State v. Banks, supra,* was a case where a testator devised real estate to B in trust to hold and to pay the net income to C for life, with remainder to the life tenant's children and a limitation over in default of issue. The testator died in 1875, and in that year B, the trustee, filed a bill in equity against all the *cestuis que trust* to have the trust administered in chancery. In 1877, the court assumed jurisdiction and directed B to account for the trust funds which he held, and thereafter to account regularly according to the usual course of the court. Some ten years later proceedings were instituted to have B file reports of the corpus and income, and this he did, and thereupon auditor's

accounts were stated, and subsequently ratified. The amount of the income found to be due by these accounts to C was paid to her. Throughout this period B had not bonded, but in 1888 application was made to require him to bond, and the court directed him to give bond, which he did in that year. On April 24th, 1890, B filed his final report, relinquished the trust, and new trustees were appointed in his stead. A year later two auditor's accounts were stated, in which it was shown that, because of inadvertent omissions in his reports, B owed to C about $2,000 on account of income which had accrued due before he had bonded but which was not then in his possession because he had previously used it for his personal benefit. These accounts of the auditor were ratified and suit was brought against B, who had become insolvent, and his sureties on his bond.

The decision recognized that generally the ratification of these last-mentioned accounts of the auditor was in the nature of an adjudication *in rem* and, so, conclusively binding on the trustee and his sureties as ascertaining and fixing their liability; but the court in *State v. Banks, supra,* distinguished the case then at bar from *Butler v. State, to use of Conlee,* 5 G. & J. 511, and *Taylor v. State, to use of Miller,* 73 Md. 208, 20 A. 914, because of the additional consideration that the default for which the action was brought had occurred before the date of the bond, and so was not within the terms of the contract, which were not susceptible of being held to have a retroactive effect. The bond so construed was in this form: "Now the condition of the above obligation is such that, if the above bounden B do and shall well and faithfully perform the trust reposed in him by said will, or that may be reposed in him by any future decree or order in the premises, then the above obligation is void."

In declaring this obligation to be prospective, the court considered not only the nature of the trust and the course and stage of its administration, but also the language of the condition. With respect to the first, it was said: "The record in the equity case, as it stood when the bond was given, in fact showed that the trustee had accounted in full up to

that date for all the trust funds which had come to his hands; and that there was, therefore, no antecedent default to which the bond could be made to apply." A concealed default, however, existed; but it was a breach of duty of long standing that had culminated in the infliction of a loss upon the life tenant when the trustee definitively failed either to pay or to account at the time of the audits. It was this combination of a breach of duty, which, dependent upon supervening circumstances, might result in a loss, and a final refusal to pay or to account for the income at the prescribed time to account or to pay, that made the court characterize the default as "committed and consummated" long before the execution of the bond.

The pending case at bar is clearly distinguishable on the facts from *State v. Banks, supra.* In the instant case, the trust is not a continuing one for the preservation and investment of the corpus and the accounting for the income and its periodic distribution to the *cestui que trust,* but for the foreclosure of a mortgage under a power. Moreover, at the time of the execution of the second bond, the trustee had formally admitted that he had in his hands as trustee the trust fund of $5,300; and later, the auditor's account accordingly charged him with this amount, so, when the bond in question was given, the trustee was neither concealing nor refusing to account for any part of the trust fund for which he was chargeable. Nor had there then been stated and ratified an account with reference to this trust fund which affirmatively showed any different liability from the one wherewith he was later debited in the auditor's account. So, while the trustee in the instant case, by having used the trust fund for his own purposes before the execution of the second bond, was guilty of what was at once a breach of trust and an inchoate default, he had not, under the circumstances of this record, consummated the default prior to the execution of the bond within the meaning of *State v. Banks, supra.*

While the circumstances were important, the conclusion of this court in *State v. Banks, supra,* was, primarily, governed by the condition of the bond in that case. The terms of the

condition have been stated and of them the court wrote: "This language is prospective. It relates to no past default, liability, or duty." The bond on this record, however, was given in a wholly different trust, and, therefore, the condition of the bond here is different, and so are the obligations assumed. The bond exacted by section 7 of article 66 of the Code was intended to be adequate in amount as well as in security. So, the requirement that the assignee give another bond, with corporate security, in the amount for which the land had been sold, was to fulfill in substance the initial requirement of the statute, that had been complied with in form but only partly in amount by the first and inadequate bond. The second bond, therefore, was not a successive bond, but a concurrent bond with the first, and is properly referable to the beginning of the foreclosure proceedings. Furthermore, the bond obligated the assignee "to perform his duty under the law as such assignee," and this imports in the body of the condition the provision of section 7 of article 66 of the Code, that "such bonds shall be and remain as an indemnity to and for the security of all persons interested in such mortgaged property or the proceeds thereof." Again, the condition was that the trustee "perform the trust reposed in him by the powers contained in the mortgage," which thereby incorporated the appropriate provisions of the mortgage in the obligations of the bond. The substantial conditions were prospective, since the proceedings had progressed only to a point where the land had been sold and the true amount of the purchase price stipulated, and its receipt acknowledged; and the power conferred by the mortgage directed that the proceeds of sale be applied by the assignee to the payment of all costs, commissions, and expenses incident to the sale, and of all claims of the mortgagee or his assignee and the claim of the mortgagors or other parties entitled to any residue.

The difference of nature, purpose, conditions, and effect of the bond, and of its related circumstances, in *State v. Banks, supra,* and of the bond at bar, is so plain that the point need not be further labored.

The failure to keep trust funds separate, or their commingling with personal funds, or their use in the business or other affairs of the fiduciary, is a breach of trust, but what gives rise to an action on the bond on this record is a breach of one of its conditions and a resultant injury. Hence a mere breach of trust does not give a right of action on the bond of the principal and surety until it be the cause of compensable injury. So, what is of concern is whether or not there has been a breach of the conditions of the bond. *Sanders v. Coward,* 13 M. & W. 65, 71, 153 Eng. Rep. 27, 29. These conditions, in the language of Holmes, C. J., in *McKim v. Glover,* 161 Mass. 418, 37 N. E. 443, may be as numerous "as there are different aspects, incidents or consequences of the same substantive wrong, and each breach of condition gives rise to a distinct grievance. It is plainly a question of the language of the contract."

In the case from which this quotation is taken there were several conditions. The second was similar to the one in the bond of *State v. Banks, supra,* while the fourth condition is of like purport to the conditions incorporated in the bond on this record by reference to the mortgage deed and the statutory law. There was a breach of both conditions, but at different times, and the court held they were several with respect to the running of the statute of limitations. The distinguished judge concluded the paragraph from which the above quotation is taken with this pertinent statement, which is used to supplement the present argument: "But there is a plain distinction between the two things secured. A man may be guilty of a breach of trust, and yet pay over the whole amount with which he is charged on final settlement. By the language of the bond the defendant is liable; and, while there are no equities against a surety, on the other hand there is no reason for not holding him to the language and meaning of his undertaking. So far from seeing anything absurd in allowing a *cestui que trust* to enforce his stipulated right to have the whole trust fund paid over at the end of the trust, we think that it would be unjust and im-

politic to deprive him of it, however old the original breach of trust may be."

The second position of the surety accepts the obligation to pay a proportionate amount of the loss sustained by the trust fund through the default of the assignee, but asserts that as surety it is subrogated to the claims and demands of the assignee, and that, upon this principle, the surety has a set-off against its liability on the bond in the amount of the demand or claim of O. Parker Baker on an accounting between him and one of the distributees, and for professional services rendered another distributee as her attorney in connection with the foreclosure and otherwise.

A set-off cannot be allowed. The plaintiff as trustee is seeking to recover a lost trust fund by a proceedings in equity against the former and delinquent trustee's two sureties. The debts are not mutual and do not exist between the successor trustee and the debtors of the first trustee in the same right. No cross-claim exists between a trustee, who, after having been appointed for that purpose, is seeking to enforce the recovery of a trust fund, which has been lost by his predecessor in the trust, and the defaulting trustee, on account of the private debts due the defaulter by any of those entitled to participate in the distribution of the trust fund. *Code,* art. 75, sec. 16; *Cohen v. Karp,* 143 Md. 211, 122 A. 524; *Westminster Metal etc. Co. v. Coffman,* 123 Md. 619, 623, 91 A. 716; *Impervious Products Co. v. Gray,* 127 Md. 64, 67 96 A. E; *Hall's Admr. v. Creswell,* 12 G. & J. 36, 51; *Tyrrell v. Tyrrell,* 54 Md. 167. The courts of equity are governed by the same rule. *Penniman v. Loney,* 40 Md. 471, 475. Other difficulties are evident, but need not be stated. *Maryland Trust Co. v. Poffenberger,* 156 Md. 200, 206, 144 A. 249.

The questions here considered are presented by exceptions to the chancellor's rulings on the evidence. As his decisions on the testimony and the decree conform to the views here expressed, the decree will be affirmed.

*Decree affirmed, with costs, and cause remanded.*