(Decided 4th December, 1890.)

WILLIAM S. TAYLOR, JR. and THOMAS KELL BRADFORD
*vs.* STATE OF MARYLAND, use of ELIZABETH H.
MILLER, use of DWIGHT D. MALLORY.

*Debtor and Creditor—Laches—Auditor's report—Order of
Ratification—Adjudication in Rem—Prima facie Estoppel
—Liability of Sureties on Bond of Trustee for Benefit of
Creditors—Fraud—Equitable defences under Act of 1888,
ch. 547 (Code Art. 75, secs. 83–85)—Attorney and Trustee.*

A creditor is under no obligation to use diligence in pursuing his
debtor, and where his failure to do so amounts merely to in-
action or passivity, this is no defence of which the sureties on
the bond of a trustee for the benefit of creditors, can avail
themselves when sued for his default.

The order of a Court of equity ratifying an auditor's report is in the
nature of a final decree; and as respects the trustee and his sureties
it partakes of the qualities of an adjudication *in rem*, distributing
the trust estate itself with which the trustee is properly charged,
and operating directly upon that estate.

Taylor and Bradford *vs.* State, use of Miller.

There is a privity in contract between principal and surety, but a judgment or decree against the former is not ordinarily a conclusive, but only a *prima facie*, estoppel against the latter.

An adjudication *in rem* is an exception to the general rule respecting the binding effect of a judgment or decree. Such an adjudication is not confined, as an estoppel, to the parties and their privies, nor is it only *prima facie* as against the latter.

When an audit disposing of trust money has been ratified, and the trustee has been ordered to pay out the funds, as audited, the order as to him and his sureties has the force and effect of an adjudication *in rem;* and, if he fails to make the payments, and his bond be put in suit, there are but two questions open for the jury, and these are: Has such an order been passed? Has the money been paid? The Court's order ratifying the audit is absolutely binding on the trustee and his sureties, unless reversed on appeal, or revoked on proper proceedings in the Court by which it was passed.

Fraud vitiates everything tainted by it, even the most solemn determination of Courts of justice; but like every other subject of judicial inquiry, it must be investigated in the proper forum, and by appropriate methods of procedure.

The Court by which an order of ratification of an auditor's account has been passed, has full power to rescind it upon the due allegation and proof of fraud; but the allegation of fraud cannot confer upon a Court of law, in a suit upon the trustee's bond, the authority to strike down, or even question, such order when passed by a Court of equity within the admitted scope of its exclusive jurisdiction.

The Act of 1888, ch. 547, (Code, Art. 75, sections 83–85) allowing equitable defences at law, was never intended to enlarge the jurisdiction of Courts of law to the extent of converting them into appellate Courts for the review of the proceedings of other tribunals; or to destroy the distinctions which exist between the jurisdiction of a Court of law and a Court of equity.

The doctrine obtaining in regard to an executor who is also trustee, or an executor who is also legatee, has no application to an attorney who is also trustee.

A trustee was employed as attorney to establish a claim against the trust fund, and an auditor's account allowing said claim was ratified by the Court. At the time of such ratification he had in

his hands sufficient funds, received by him as trustee, to pay the claim. HELD:

That such ratification of the account did not operate a transfer of the trust funds, to the amount of the claim, from himself as trustee, to himself as attorney, and thus relieve the sureties on his trustee's bond from liability for his subsequent misappropriation of the fund.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court. The following are the additional pleas mentioned in the opinion of the Court, the demurrers to which were sustained:

And the defendants, for an additional plea, say: For defence on equitable grounds, that the said Elizabeth Miller, by O. W. Miller, her husband and agent, employed the said John H. Handy, as her solicitor, to file a claim for her against the estate of O. W. Miller & Co., in the Circuit Court of Baltimore City, knowing at the time that the said John H. Handy was then the trustee of said estate, and as such, had in his possession all the moneys and property belonging to said trust estate, and that with such knowledge she permitted and allowed the said John H. Handy to retain in his hands all of said money, without making any effort to collect the said money from him, although his condition previously was well known to her and her said agent, and that even after the statement of the auditor's account in said trust estate, a long time was suffered to elapse by her before the account allowing said claim was ratified, during which time the funds were dissipated, and the money was therefore not paid to her by reason of her own laches and negligence, and thereby the defendant and his co-surety were discharged from any liability upon the bond sued upon in this case. And for second additional plea for defence on equitable grounds, says: That the equitable plaintiff employed John H. Handy, as her solicitor,

to collect the claim filed by her in the estate of O. W. Miller and Co., the said O. W. Miller being her husband, and that as such attorney, the said John H. Handy collected, and received into his *possession*, for the said equitable plaintiff, the whole amount of the claim allowed to her by the auditor's account, in said case of the trust estate of O. W. Miller and Co.; and these defendants were, by such receipt, discharged as sureties upon the bond sued upon in this case.

And for a third plea making equitable defence to the said action, the defendant, T. Kell Bradford, says: That the plaintiff, knowing that the said John H. Handy, had been appointed trustee under the deed of assignment made for the benefit of creditors by the said O. W. Miller & Co., and that said Handy had given bond to the State of Maryland, with sureties, for the due performance of said trust, and that the duties of this trust bound him to protect and preserve the trust fund in his hands for the benefit of the creditors, nevertheless, for the purpose of establishing certain claims of her own against the said trust fund, employed the said Handy to establish and collect said claims, thereby placing him in a position where he was forced to elect between the performance of his duty as trustee, for which the defendant, as one of the said sureties, had made himself responsible, and his duty as attorney as aforesaid; that the said Handy, for the compensation the plaintiff agreed should be paid him in consideration of the service to be rendered as attorney as aforesaid, in establishing and collecting said claims, agreed with certain creditors of the said O. W. Miller & Co., who had filed exceptions to the allowance of the said claims, on the ground that they were, to a great extent, if not altogether, fictitious and fraudulent; that he, the said Handy, as trustee, would pay the exceptants the full amount of the percentage allowed on their claims by the auditor, provided they

would withdraw the said exceptions, and thereby remove the only obstacle which prevented the said Handy, as attorney, from establishing and collecting the said claims; and the defendant further says, that the said claims were fraudulent; that the said excepting creditors were paid by the said Handy, as trustee, as agreed, and the said fraudulent claims represented by Handy, as attorney of the plaintiff, were allowed, and allowed in consequence of the withdrawal of these exceptions, and because the said Handy, having an interest in their allowance as attorney, did not resist their allowance as trustee, and constitute the very claims on which this suit is brought; and the defendant says, that it would be grossly inequitable and unjust to make him, as surety, pay for the default of his principal in not paying money over to a client, who thus tempted him into a violation of duty by which the said money was collected, and that such a liability cannot be enforced without a breach of good morals and sound public policy; and this he is ready to verify.

*First Exception.*—The plaintiff having offered in evidence the auditor's report, allowing the claim of Elizabeth H. Miller, the equitable plaintiff, the defendants offered in evidence her claim as filed against the trust estate, and offered to follow the same up by evidence showing that said claim was fraudulent, and that no money was owing to her. To the admission of said claim as evidence in this case, and the offer of testimony therewith, the plaintiff objected upon the ground that the defendants were concluded and estopped by the auditor's account, and the order finally ratifying the same, from making any objections to said claim. The Court (HARLAN, J.) sustained the objection and refused to admit the evidence as offered. The defendants excepted.

*Second Exception.*—After the evidence in the first bill of exception, the defendants offered to prove by O. W.

Miller, a competent witness, who had been sworn for the plaintiff, that he is the husband of Elizabeth H. Miller, the equitable plaintiff, and that the claim of his wife, as offered in the first bill of exception, against the estate of O. W. Miller and Co., and as allowed in the auditor's account of the distribution of the fund in said estate, and contained in the first bill of exception, really represented money which had been paid to her by him, (her husband) out of the earnings and profits of the business of said O. W. Miller and Co., and did not represent any part and parcel of her separate estate, which she had the power to use, transfer or control in her own right; and they also offered the original promissory notes of O. W. Miller and O. W. Miller and Co., as filed with the claim set out in the first bill of exception, for the purpose of showing that upon their face the same were fraudulent and fictitious, and offered to follow up the evidence so offered by the proper evidence to sustain their fraudulent character.    To the admission of the evidence as offered, the plaintiff objected, and the Court sustained the objection, and refused to admit the same.    The defendants excepted.

*Third Exception.*—The defendants then made the following offer in writing:

"The defendants in this case offer to prove by O. W. Miller, a competent witness, still being on the stand, that the claim of Elizabeth H. Miller, as offered in evidence in this case, was made up of the sum of fifty-four hundred dollars, which came to the said Elizabeth H. Miller from the estate of her father, who died in the State of Connecticut about sixteen or seventeen years ago, which was paid to her husband, O. W. Miller, and by him invested in his own business, and that the balance of said claim, being about $20,600, is made up by accretion, in the shape of interest upon said sum of fifty-four hundred dollars, and profits alleged to have been

made in business by said O. W. Miller, by the use of the money so due to her for the distributive share of her father's estate as aforesaid.'' And proposed to follow the same up with other evidence, showing the fraudulent character of said claim of Elizabeth H. Miller. To said offer in writing, and the verbal statement accompanying the same, the plaintiff objected, and the Court sustained said objection and refused to allow the evidence so offered to go to the jury. The defendants excepted.

*Fourth Exception.*—The plaintiff offered the following prayer:

1. That if the jury shall find that O. W. Miller & Co. executed to John H. Handy, trustee, for the benefit of the creditors of said O. W. Miller & Co., the deed offered in evidence, and that said Handy accepted the trust by said deed on him imposed, and that said John H. Handy, together with T. Kell Bradford and William S. Taylor, Jr., defendants in this case, executed the trustee's bond offered in evidence in this case, conditioned to secure the faithful execution of said trust, and that upon the petition of said Handy, trustee, the Circuit Court of Baltimore City assumed jurisdiction over the administration of said trust, and that an auditor's account was duly passed and ratified on the 24th day of June, A. D. 1889, by said Circuit Court distributing said trust estate, by which said account the sum of three thousand nine hundred and fifty-nine dollars, and twenty-eight cents, was distributed to Elizabeth H. Miller, the equitable plaintiff in this case, and the said trustee was ordered by the Court to pay over said amount to said equitable plaintiff, and that said trustee had notice of the passage and final ratification of said account. And if the jury shall further find, that demand was made on said Handy, trustee, to pay over the said amount to said equitable plaintiff, but that said Handy, trustee, has refused or neglected so to do, their verdict shall be in this action for the plaintiff for the amount so

allowed by said auditor's account, together with interest in their discretion from the time of ratification of said auditor's account to date.

The defendants offered the three following prayers:

1. That if the jury believe from the evidence that the said John H. Handy was employed by the equitable plaintiff as attorney to collect the said claims which gave rise to this suit, and that he collected the said claims as attorney, and had the money in his hands after the ratification of the auditor's account offered in evidence, and failed to pay the money over to the equitable plaintiff, then their verdict must be for the defendants.

2. If the jury shall find from the evidence that John H. Handy was trustee for the creditors of O. W. Miller & Co., and while trustee he was employed by the said O. W. Miller, as agent for his wife, as solicitor, to collect a claim against said trust estate for the equitable plaintiff, and that when the account distributing the proceeds of the assets of said estate was ratified, that the said Handy had in his hands sufficient funds, received by him as trustee, to pay the claim of the equitable plaintiff, then the jury may infer that the money, so in his hands, was held by him as solicitor for the equitable plaintiff, and the sureties were thereby discharged.

3. If the jury believe from the evidence that John H. Handy was trustee for the benefit of creditors of O. W. Miller & Co., and that while such trustee he was employed as solicitor by the equitable plaintiff, the wife of the said O. W. Miller, to collect a claim she held against O. W. Miller & Co., and that as such solicitor, he took testimony in support of said claim; and they further find, that exceptions were filed to said claim and withdrawn, and said claim was allowed, then the sum awarded in said trust matter of O. W. Miller & Co., to the equitable plaintiff, passed by operation of law, to John H. Handy, solicitor of the equitable plaintiff, and

the equitable plaintiff cannot recover against the bonds-men of the said John H. Handy.

The Court granted the plaintiff's prayer, and refused to grant the prayers of the defendants. The defendants excepted and the verdict and judgment being against them they appealed.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, FOWLER, and McSHERRY, J.

*Joseph P. Merryman,* and *John V. L. Findlay,* for the appellants.

*Alfred S. Niles,* and *Robert H. Smith,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

Oliver W. Miller and Albert B. Carter, partners, conveyed to John H. Handy, Esq. their property, in trust for the benefit of their creditors. Mr. Handy accepted the trust, and gave bond, with the appellants as sureties thereon. The trustee converted the trust estate into money, and, after some delay, an audit was stated, making distribution of the funds amongst the creditors of the grantors. The wife of Mr. Miller claimed to be a creditor for a large amount, and her demand, evidenced by sundry promissory notes, was filed with the auditor, and allowed its due per centage. Some of the other creditors then filed exceptions to the allowance of her claim, but these exceptions were subsequently withdrawn or overruled, and the audit was finally ratified by the Circuit Court of Baltimore City. After notice to and demand upon Mr. Handy, and his failure to pay, Mrs. Miller instituted suit upon his bond to recover the amounts audited to her. To the declaration, which assigned the non-payment of the money as a breach of the condition of the bond, several pleas were pleaded

by the sureties, but judgment by default was entered against the trustee for the amount claimed. The first and third additional pleas, which made defence on equitable grounds, were demurred to, and the principal question in the case is raised by one of these demurrers.

The first additional plea alleged, in substance, that Mrs. Miller made no effort to collect the money from the trustee, and that the fund was dissipated in consequence; and that it was not paid to her by reason of her own *laches* and negligence, whereby the sureties were discharged. The third alleged that Mrs. Miller employed Mr. Handy as attorney to establish for her her claims against the trust fund; that those claims were fraudulent and fictitious; that Mrs. Miller agreed to compensate Mr. Handy for his services in securing the allowance of these claims; and that Mr. Handy, having an interest in their allowance, procured the withdrawal of the exceptions which had been filed by other creditors against these claims, and did not as trustee resist their allowance, and that the claims thus allowed are the very ones on which the pending suit was brought. The demurrers were sustained. Issues were joined on other pleas and the case went to trial. During its progress four exceptions were reserved, and they will be adverted to hereafter.

We think there was no error in the Court's ruling on the demurrer to the first plea making defence on equitable grounds. The creditor is under no obligation to use diligence in pursuing his debtor, and where his failure to do so amounts merely to inaction or passivity, this is no defence, of which the sureties can avail themselves when sued for his default. As we have considered and passed upon this identical question at the present term, *McShane and Rodgers vs. Howard Bank, ante* page 135, it is not necessary to repeat what has been so recently said on that subject.

The third plea involves an inquiry into the effect of the order finally ratifying the auditor's report when that order is assailed for fraud in an action at law on the bond of the defaulting trustee. If the order of ratification is conclusive upon the sureties when collaterally impeached at law for fraud, the case is at an end. If upon the other hand, it may be stricken down in a collateral proceeding, there was error in sustaining the demurrer. The effect of an order ratifying an auditor's report, in so far as it fixed the liability of the trustee's sureties, was decided by our predecessors in the case of *Butler and Belt vs. The State, use of Contee and Bowie,* 5 *G. & J.,* 511. In that case the facts were these: E. M. Dorsey had been appointed by the Prince George's County Court to sell the real estate owned by Walter B. Brooke. He made sale, and subsequently Contee and Bowie filed claims, held by them against the estate of Brooke in the equity cause wherein Dorsey was trustee, and the auditor reported to the Court that these claims were entitled to be paid out of the proceeds of the estate of Brooke. This report was finally ratified, and the trustee was ordered to pay the claims. Failing to do so, his bond was put in suit, and upon the trial the sureties offered to show, in mitigation of damages, that the trustee, Dorsey, did not receive, in the character of trustee, a sufficient amount of money to pay these claims, and that before he had done so another trustee had by authority of the said Court been substituted in his place, by whom the balance of the purchase money had been received. This evidence was not allowed to be given, and the Court said: "The question on which it was offered was not open for consideration for the jury. It was adjudicated by the county Court, as a Court of equity, in their peremptory order on E. M. Dorsey, the trustee, to pay over to the real plaintiffs in this action, the sum of money stated by the audit, then confirmed, to be due them, and for

the recovery of which the present action was instituted. To have admitted the testimony would have been to constitute the jury an appellate tribunal to reverse the order or decree of the county Court, long antecedently, solemnly, and judicially pronounced, when sitting as a Court of equity. * * * *    The justice and legality of the order could not have been a subject of inquiry, in the trial of this cause in the Court below.    They were questions not examinable when thus indirectly and collaterally presented; but could only be re-examined and re-adjudicated by a direct appeal from such order to this Court; or on a rehearing or bill of review before the same tribunal by which the order was passed.''    And in the later case of *Cook's Lessee vs. Carroll,* 6 *Md.,* 111, which was an action of ejectment, the defendant offered testimony, which was admitted by the county Court, tending to prove that the patent upon which the plaintiff relied was obtained by fraud, but upon appeal the ruling was reversed and this Court said: ''We also think the Court erred in allowing testimony to be adduced for the purpose of showing fraud in the obtention of the patent.    If there was any fraud or misrepresentation in causing its issue, it could only be inquired into by the tribunal that issued it, or by a Court of equity.    It is a well settled principle of law that the acts of a competent tribunal cannot be reviewed collaterally.    They are to be taken as a just and proper exercise of power in all other Courts.''    The same principle has been repeatedly applied when, in actions at law, instituted by administrators, attempts have been made to show by way of defence, that the letters of administration were obtained or procured by fraud.    In every such instance this Court has held that the regularity of the appointment of an administrator by the Orphans' Court could not be impeached collaterally, even upon an allegation of fraud.    *Raborg's Adm'x vs. Hammond, Adm'r,* 2 *Har. & G.,* 42; *Wilson vs. Ireland,* 4 *Md.,* 444.

Now, the plea which we are considering was intended to make, for trial by a jury, an issne as to whether the order ratifying the auditor's report was procured by fraud. Its effect would have been to submit to the jury, for review by them in a Court of law, the regularity and propriety of an order passed by a Court of equity, in due form, and with respect to a subject exclusively within the jurisdiction of the latter Court. Thus not only would that order have been brought collaterally into question, but a Court of law would have been actually transformed into an appellate tribunal to pass upon a subject wholly outside of its well defined jurisdiction. The grave consequenees which such a departure from established principles would entail cannot be easily over-estimated. There would soon cease to be any certainty or stability in judicial proceedings, for the most formal adjudications could be brought into questian in any other tribunal upon the mere allegation of fraud, and re-examined, and then reversed by the verdict of a jury, or even by the judgment of a justice of the peace.

The order of a Court of equity ratifying an auditor's report is in the nature of a final decree. It is not confined to a mere direction to the trustee to pay certain claims, but, as respects the trustee and his sureties, partakes of the qualities of an adjudication *in rem* distributing the trust estate itself with which the trustee is properly charged, and operating directly upon that estate; and it is only passed after due constructive notice by publication has been given, as prescribed by the statute. It is a general rule, which obtains in every system of jurisprudence, that no person is bound by a judgment or decree except the parties to the cause, and those who stand towards them in some relation of privity. There are several such relations of privity. In some, the estoppel is conclusive, in others, but *prima facie*. There is a privity in contract between principal and surety,

but a judgment or decree against the former is not ordinarily a conclusive, but only a *prima facie,* estoppel against the latter.    An adjudication *in rem* is an exception to the general rule respecting the binding effect of a judgment or decree.    Such an adjudication is not confined, as an estoppel, to the parties and their privies, nor is it only *prima facie* as against the latter.    If a decretal order, disposing of a trust estate in the hands of a trustee, be not an adjudication *in rem,* as respects him and his sureties, the latter, when not parties to the cause, would not be concluded by it, but might in some other Court dispute each item of the audit, and, as often bring in question collaterally the propriety of the decree passed by a Court having exclusive jurisdiction over the trust property.    This, as we have seen, cannot be permitted. When an audit disposing of trust money has been ratified, and the trustee has been ordered to pay out the funds as audited, the order as to him and his sureties has the force and effect of an adjudication *in rem,* and, if he fails to make the payments and his bond be put in suit, there are but two questions open for the jury, and these are:  Has such an order been passed, has the money been paid?    The court's order ratifying the audit is absolutely binding on the trustee and his sureties unless reversed on appeal to this Court, or revoked on proper proceedings in the Court by which it was passed.    An order like this differs essentially from an account stated in the Orphans' Court by an executor or administrator.

That fraud vitiates every thing tainted by it, even the most solemn determinations of Courts of justice, is an axiom of universal application, but like every other subject of judicial inquiry, fraud must be investigated in the proper forum and by appropriate methods of procedure.    That the Circuit Court which passed the order of ratification had, and still has, full power to rescind

it upon the due allegation and proof of fraud is unde-
niably true. But it is equally true that the allegation
of fraud cannot, in such a case as this, confer upon a
Court of law the authority to strike down, or even ques-
tion, an order of this character, passed by a Court of
equity, within the admitted scope of its exclusive juris-
diction. It has, however, been insisted that the *Act of*
1888, *ch.* 547, *Code, Art.* 75, *secs.* 83, 84, 85, allowing
equitable defences at law, sanctions the plea in question.
We do not think so. That statute was designed to pre-
vent circuity of actions in many instances, and to allow
numerous defences at law, which, before its passage,
could only have been availed of in equity, but was never
intended to enlarge the jurisdiction of Courts of law
to the extent of converting them into appellate Courts
for the review of the proceedings of other tribunals.
It never intended to destroy the distinctions which exist
between the jurisdiction of a Court of law and a Court
of equity; and it does not by its language confer upon
the former the authority to impeach such an order or de-
cree of the latter as we now have before us.

For the reasons given, we are of opinion that the third
plea was bad, and that there was no error in sustain-
ing the demurrer to it. For the same reasons there
was no error in the first, second, and third exceptions
reserved to the rulings of the Court in excluding the
evidence offered to establish the alleged fraudulent char-
acter of Mrs. Miller's claims. The remaining exception
relates to the rulings on the prayers. The first prayer
of the appellants asked an instruction to the effect that
if Mr. Handy was employed by Mrs. Miller as attorney to
collect the claims in question, and if he collected them
as attorney, and had the money in his hands after the
ratification of the auditor's report, and failed to pay the
money over to Mrs. Miller, the sureties were not liable.
There was no evidence to support this prayer. Mr. Handy

Taylor and Bradford *vs.* State, use of Miller.

was employed to establish, and not to collect, these claims, and he distinctly testified that there was no separation by him of the funds payable to Mrs. Miller from the other funds belonging to the estate, but each was mingled with the other.    The second prayer asked an instruction that if Mr. Handy had been employed to collect Mrs. Miller's claim, and if, when the audit was ratified he had in his hands sufficient funds, received by him as trustee, to pay the claim of the equitable plaintiff, "then the jury may infer that the money so in his hands was held by him as solicitor for the equitable plaintiff, and the sureties are thereby discharged." This was properly rejected.    Besides the absence of evidence to show that Mr. Handy was employed by Mrs. Miller to collect the claim, there is no legal principle which would have justified the jury, from the evidence in the cause, in making the inference mentioned in the prayer.    This is not the case of an executor who is also trustee, nor the case of an executor who is also legatee; and the doctrine obtaining in such cases, and in those relations, has no application to an attorney who is also trustee. The prayer granted at the instance of the appellee contains no error of which the appellants can complain. Discovering no errors in the record, the judgment must be affirmed with costs.

*Judgment affirmed,*
*with costs.*

(Decided 5th December, 1890.)