WILLIAM H. SURRATT ET AL., *v.* STATE, USE OF
THEODORE J. BOLLINGER, GUARDIAN

[No. 28, April Term, 1934]

358

*Decided July 6th, 1934.*
*Reargument denied November 5th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom was *Clater W. Smith* on the brief, for the appellants.

*Benjamin L. Freeny,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

In a suit on a bond given by trustees for the sale of real estate, brought by one entitled in distribution under an order of the court of equity, for failure of the trustees to make payment of the proceeds, defense has been made on the ground of loss of the money by failure of a carefully chosen depositary nine days after the passage of the equity court's order; and the question is on whom the loss is to fall under the law. The plaintiff, distributee, has recovered a judgment on the bond for the amount unpaid, and the defendants appeal.

William H. Surratt and Stephen P. Campbell were appointed trustees for the sale, and they gave bond with the Maryland Casualty Company as surety. The sale was made for an amount to be paid in installments, and partial distributions were made upon the ratification of two earlier accounts filed respectively on July 21st, 1931, and June 20th, 1932. The amounts paid in were, as they were received, deposited by the trustees in the banking department of the Title Guarantee & Trust Company of Baltimore, and there is no contention that there was any lack of diligence in the choice of depositary then or at the time of the loss subsequently. After some delay on the part of the trustees, their final account of distribution of the remainder of the proceeds of sale was filed on January 31st, 1933; and it was ratified on February 11th, 1933, in due course. The time intervening before payment, nine days, was consumed in demands on behalf of the distributee for payment, a demand by Mr. Surratt,

one of the trustees, for a release, which counsel for the distributee then prepared, some hesitation on Mr. Surratt's part to accept the release in the form adopted, and other delays by Mr. Surratt interspersed through the time. Mr. Surratt was ill, unable to attend to his duties regularly, and was seldom found in his office. His co-trustee was not performing any of the duties of the trust except that of signing papers, leaving the active administration to Mr. Surratt entirely.

The day of the ratification of the final account was a Saturday, February 11th. There was testimony of a demand by the distributee upon Mr. Surratt's secretary that day for payment, but payment could not be made because of Mr. Surratt's absence. Failing to receive payment on the following Monday, Mr. Freeny, counsel for the distributee, twice again made demand, and late in the same day was informed of Mr. Surratt's desire for a release in a specified form. Mr. Freeny prepared a release, had it executed by his client, and on Thursday presented it to Mr. Surratt's secretary and again made demand for payment; but, although checks for payment had been prepared, Mr. Campbell had not yet signed them. Later on the same day, Thursday, Mr. Surratt, reached by telephone, reported that the release was not in the form he desired. On Friday, the release was accepted, and on Saturday, February 18th, the checks, duly signed by both trustees, were paid over, and were deposited on the same day in the Union Trust Company, also of Baltimore. Before they could be paid on the next succeeding business day, the drawee, the Title Guarantee & Trust Company, failed. It did not open on Monday, and has since been in the hands of the banking commissioner as receiver.

The condition of the bond was the usual one of faithful performance of the trust reposed in the trustees by the decree of the court appointing them, or that might be reposed in them by any future decree or order in the premises, and the question of breach has been argued partly as one of performance of the duties of the trust

with reasonable diligence and promptness. But the case differs from those in which questions of diligent performance usually arise. The order of final ratification of their distribution account did not commit the fund to the care and custody of the trustees any longer. All that was over. The court of equity was through with the administration of the trust, the trust management was ended, and the trustees were left under the single, peremptory obligation to deliver over the assets out of their hands, terminating their care and custody. From that point they had money due and payable to the distributee. "The suit is then considered as closed." *Trayhern v. Nat. Mechanics' Bank*, 57 Md. 590, 597. "The trustee's duty, as soon as the order was passed, and the money was received by him, was to pay it over to the parties, or to carry it into the Court of Chancery." *Richardson v. State*, 2 Gill, 439, 443. Such an order is, indeed in one sense, itself the distribution. "The order of a court of equity ratifying an auditor's report is in the nature of a final decree. It is not confined to a mere direction to the trustee to pay certain claims, but, as respects the trustee and his sureties, partakes of the qualities of an adjudication *in rem* distributing the trust estate itself with which the trustee is properly charged, and operating directly upon that estate." *Taylor v. State*, 73 Md. 208, 220, 20 A. 914, 915; *Rogers, Brown & Co. v. Citizens' Bank*, 93 Md. 613, 616, 49 A. 843. It constitutes a final, binding adjudication in the court of equity that the trustees have the money to be distributed; the specified distributees have been adjudged entitled to receive it, and entitled to receive it at once. It is settled that trustees and their sureties cannot then, in a suit on their bond, defend on the ground that the money was not in fact received by them. Proof of that fact would not be within the issue. *Butler v. State*, 5 G. & J. 511, 520; *Taylor v. State*, 73 Md. 208, 218, 20 A. 914. The only questions that would then be within the issue, as this court stated in the cases cited, would be: Did the court of equity pass such an order; and has payment been made conformably

thereto? *Ward v. Schlosser,* 111 Md. 528, 531, 75 A. 116; *State v. Graham,* 115 Md. 520, 522, 523, 81 A. 31.

The question of time when distribution must be made to conform to the order, and to the condition of the bond for performance, has been settled in many cases. "It is enough, if the trustee has received the money and knows that the account has been audited and confirmed. In such a case a claimant can sue on the bond, immediately after he has made a demand for what is due him." *Scott v. State,* 2 Md. 284, 291. "When the auditor's account was ratified, Forrester, as trustee, became liable to pay on notice thereof and demand, and Kernan entitled to receive the sum of money audited to the latter." *Forrester v. State,* 46 Md. 154, 162; *Brooks v. Brooke,* 12 G. & J. 306, 319; *Dent v. Maddox,* 4 Md. 522, 529; *Gott v. State,* 44 Md. 319, 338; *Brumbaugh v. Schleigh,* 54 Md. 641, 646; *State v. Digges,* 21 Md. 240.

This settled finality of the equity order adjudging the distributee entitled to the fund, and the settled liability on the bond when payment is not made to him on demand, would seem to dispose of the present question of liability after a subsequent loss from failure of the trustees' depositary. On no theory of law could that established liability, not appealed from at its source in the court of equity, be subsequently canceled by the loss of money. Nothing but payment, or a transfer to the distributee of the risk of insolvency of the bank, could discharge the liability.

There seem to have been very few cases in which courts have had to deal with this question of loss of funds after trustees have been ordered to make payment, none at all in this country apparently. In the English case of *Lunham v. Blundell,* 27 L. J. Ch. 179, 4 Jur. (N. S.) 3, 6 W. R. 49, an order of August 11th, that a trustee should turn money over to a substituted trustee, was not complied with during more than a month, the trustee meanwhile having been ill and absent from home, and having asked and received indulgence from the transferee. The bank in which he had kept the money failed on Septem-

.ber 24th following. Stuart, V. C., held that after the order or decree for payment over, the retiring trustee held the money on deposit at his personal risk. "Upon the pronouncing of the decree, the defendant's character of trustee was determined, and after the taxation of his costs, there could be no fair pretence for delaying to pay the money to the new trustees appointed by the court. The letters were written for indulgence which was granted, but the defendant cannot on that ground be held entitled to be exonerated from his personal liability to make good the loss which has taken place." 27 L. J. Ch. 179. And in *Wilkinson v. Bewick*, 4 Jur. (N. S.) 1010, trustees were ordered to pay into court money found payable in an audit or account but delayed doing so, and their depositary failed. Romilly, M. R., said: "The effect of the account which had been passed by the chief clerk in July, was to make the 546 *l*, 0 *s*, 9 *d*, in the bank cease to be trust property, and become the money of the trustees themselves; and as to that amount therefore, they must consequently bear the loss."

There is a question of a possibility that the risk of failure of the bank may have been transferred to the distributee by the check given him. But the payee of a check drawn on a bank in the same city is, in the absence of special circumstances, allowed the whole of the banking hours on the next secular day for presentment on the drawee. Code, art. 13, secs. 90 and 104; *Daniel, Negotiable Instruments* (7th Ed) secs. 368 and 1775; *Anderson v. Gill*, 79 Md. 312, 320, 29 A. 527. So much time is allowed for taking over the money; before the expiration of that time, the risk of loss of the deposit remains on the drawer; and after that time, while the payee may, if he deems fit, delay the appropriation of the money, he does so only at his own risk. And in this case, the loss by failure of the depositary occurred on the next secular day (Monday), after the delivery of the check, while the deposit was still at the risk of the drawers, the trustees.

It is not uncommon for trustees to defer payment for convenience—or, it may be, to proceed unhurriedly with

it—and in ordinary times, when failure of banks is not to be feared, there is little or no harm done, and no occasion for litigation. But that fact does not answer the question of responsibility on the bond for money due the distributees and unpaid because of bank failure. The delay in this case was comparatively short, although obviously beyond the time required to turn over the money. It is explained by Mr. Surratt's illness in part, though it might be found not justified by it, because his cotrustee was also an attorney, capable of attending to the distribution. The delayed demand for a release is not unusual, but it does not extend the time necessary for turning the money over. 2 *Perry, Trusts* (7th Ed.) secs. 922-924; *Lewin, Trusts* (13th Ed.) 310. But the risk of the loss, and the liability on the bond, need not be based on negligence in the trustees, or on wrong done. It is the opinion of this court that, however it might be explained and excused, the delay was at the risk of the trustees in case of the unexpected event of bank failure, that the subsequent loss does not save the breach of the bond, and that, payment not having been made as ordered by the court, the bond is liable.

Coming to the specific rulings of the trial court objected to, the jury was instructed on a prayer of the plaintiff that after the order ratifying the account the sum awarded to the plaintiff was due and payable. This exactly repeats the ruling in the cases previously cited, and was correct. The defendants prayed a direction of a verdict in their favor on general grounds, or on the particular ground that the bank failure relieved them of liability on the bond. The direction was denied, and for the reasons already given this was a correct ruling. No other rulings on prayers for instructions have been questioned on appeal. An exception was taken to the admission of evidence for the plaintiff that upon earlier distributions made by the trustees they did not require releases to be given them, evidence offered to prove that the trustees were seeking delay in this instance, but the admission would be insufficient to vitiate the judgment if the evi-

dence was not relevant. It could not have obtained for the equitable plaintiff in the case a verdict beyond his legal rights on the admitted facts.

*Judgment affirmed, with costs.*

ADKINS, J., dissents.

OFFUTT, J., filed a separate opinion as follows:

By a decree of Circuit Court No. 2 of Baltimore City passed in the case of Jackson et al. v. Gerken et al., therein pending, Stephen P. Campbell, Jr., and William H. Surratt were appointed trustees to sell the property described in that proceeding, after having first filed a bond in the penalty of $15,000, conditioned for the "faithful performance of the trust reposed in them by" the decree "or to be reposed in them by any future decree or order in the premises," and required to "bring into this Court the money arising from said sale to be distributed under the direction of this Court."

In ordinary course the sale was made, reported and ratified, and eventually on February 11th, 1933, an auditor's account distributing to Theodore J. Bollinger, guardian of Jane R. Bollinger, infant, $244.37, was finally ratified. Counsel for the distributee, Benjamin L. Freeny, on February 11th or February 13th, 1933, demanded of the trustees payment of that amount. A check for the amount distributed to Bollinger was prepared on February 14th and signed by Surratt on that day, but was not signed by Campbell until February 16th. On the day the check was prepared, February 14th, 1933, Surratt's secretary called Freeny's office and left a message that, if he would prepare a release and send it to Surratt's office, the check would be turned over to him, or that, if he did not want to prepare the release and would so inform Surratt's office, "we would prepare it." Freeny prepared the release and sent it to Surratt's office on February 16th, after Surratt had left for the day. At that time Campbell had not signed the check, but after

he had signed it, on February 17th, Freeny again sent the release to Surratt's office, and again demanded the check, and again Surratt, who under his physician's orders was only spending two hours a day at his office, had left his office for the day. His secretary called him at his home and read the release to him. Surratt apparently was not satisfied with the form of it, but on the following day he approved it, it was accepted, and before 10 o'clock on the morning of February 18th, 1933, which was Saturday, the check was turned over to Freeny's secretary.

The check was drawn on the Title Guarantee & Trust Company of Baltimore, where the trustees had deposited all funds of the trust in a joint trustee's account. On Saturday, February 18th, 1933, the check was deposited for collection with the Union Trust Company. The Title Guarantee & Trust Company closed its doors on Monday, February 20th, and did not reopen thereafter, and on February 20th the Union Trust Company notified Freeny that the check had not been paid and had been charged to his account. Checks deposited with the Union Trust Company prior to February 18th, drawn on the Title Guarantee & Trust Company, cleared on that day, which was the last day on which they cleared. On the 11th of March, 1933, this action was brought on the trustees' bond to recover the amount so as aforesaid audited to the equitable plaintiff, Jane R. Bollinger. To the declaration the defendants pleaded, first, "never promised"; second, "never indebted"; and two special pleas. In their third plea they relied first upon the facts stated above and upon the further fact alleged therein that they had exercised reasonable care in the selection of a depositary as constituting a bar to the action, and in the fourth plea they set up much the same facts as a defense upon equitable grounds. A demurrer to the third plea was overruled and a demurrer to the fourth plea sustained. By way of replication the plaintiff relied upon the same facts, and the further fact that the trustees had not stated the account with "promptness and dispatch",

to establish the conclusion that the trustees had failed to "abide by and perform" the requirements of the decree. A demurrer to that replication having been overruled, the defendants rejoined: "That the defendant trustees did not fail or neglect to state an account with promptness and dispatch, in accordance with the order of the Circuit Court No. 2 of Baltimore City passed on the 9th day of December, 1932; nor did said defendant trustees negligently fail to pay unto the equitable plaintiff the sum of money distributed to him by the account which was ratified by said Court on the 11th day of February, 1933; but that the failure to pay said sum of money was caused solely by the failure of the Title Guarantee and Trust Company on February 20, 1933." On that rejoinder the plaintiff joined issue.

There can be no doubt that an action on a bond is an action *ex contractu*. *Bullen & Leake, Prec. of Pl.* 117; 1 *Poe. Pl. & Pr.* secs. 52, 62, 63, 63A. Code, art. 75, sec. 4, provides that in any action *ex contractu* the general issue pleas shall be "never promised," and "never was indebted," and that under either form all matters of defense and discharge shall be admissible in evidence, except "any matters which could only be availed of by a special plea, or by a more express denial than such general issue plea, in an action of assumpsit prior to the enactment of this section." If that language has any significance, it would seem that all matters alleged in defendants' third plea would have been admissible, if at all, under their general issue pleas, and that that plea was bad because it amounted to the general issue. The case really turned upon the construction of two written instruments, the decree and the bond. The execution of the bond, not having been denied, was admitted (Code, art. 75, sec. 14) and the decree was proved in the case. The defendants in their third plea alleged facts which were relevant only if the duty imposed upon the trustees by the decree was to exercise reasonable care in carrying out its mandates, and were intended to show that they had exercised such care. In overruling a demurrer to it the court decided

that if they showed such facts the action was barred. In the replication, without traversing the facts alleged in the plea, and without giving color by confessing its allegations, the plaintiff alleged other facts, intended to show that the defendants had not exercised due care to perform and abide by the decree. The pleadings therefore were wholly inartificial and by any recognized rules of formal pleading improper. But they did finally result in this issue, was the loss of which the plaintiff complains caused by the negligence of the defendants in the performance of the duties imposed upon them by the decree, or the order finally ratifying the account which distributed the fund, and on that issue the case was tried. The prayers of the defendants were predicated on that theory, the only prayer offered by the plaintiff was not inconsistent with it, and the court in granting defendants' seventh prayer decided that the only issue in the case was whether, after the auditor's account had been stated, the trustees had exercised ordinary care and diligence to pay to the plaintiff the amount due under the audit. The judgment was for the plaintiff, so that the effect of the rulings as to her is not involved in this appeal, nor were the defendants injured if there was in the case evidence legally sufficient to sustain the charge of negligence, for in all other respects the rulings in respect to the prayers appear to be free from error. In my judgment there was legally sufficient evidence to require the submission of that issue to a jury, which would lead me to an affirmance.

But a majority of the court take the view that there was in the case no evidence legally sufficient to show such negligence, but that nevertheless the judgment must be affirmed, because, upon the final ratification of the auditor's account, the liability of the trustees instantly became absolute and unconditional, on the theory that, as soon as that account was ratified, the trustees became converted into creditors of the distributee.

If there was in the case evidence legally sufficient to show that the trustees had been negligent in the dis-

charge of their duties as trustees and that the loss complained of resulted from that negligence, then, whether their liability was absolute or conditioned upon their failure to exercise reasonable care and diligence in the performance of their duties, the demurrer prayers were properly refused, and, as the case was tried upon the theory of conditional liability, any discussion of absolute liability becomes unnecessary and *obiter*.

While I agree with the conclusion announced in the opinion, I am unable to agree that there was no evidence legally sufficient to show that the trustees had failed to exercise due diligence and care in paying over to the distributee the money distributed to her by the auditor's account, nor with the proposition that, upon the ratification of the auditor's account, the trustees ceased to be such, but instantly became debtors of the distributee, and absolutely subject to a liability which depended not in any degree upon care, diligence, or attention, but upon the single fact that they had had in their possession money which had been audited to the claimant.

The effect of the decision, stated in a form which, while extreme, is nevertheless consistent with its language, is that a trustee must be prepared at any instant, after the ratification of a distribution account, to have to pay upon demand in legal tender the amount found to be due the defendant by the account. So that neither the fact that the trustee has exercised the highest possible degree of care in the selection of a depositary, and exercised the utmost diligence in attempting to secure and pay over the fund, will discharge him from liability if the depositary fails after the audit, nor will the fact that he had actually secured and had the funds in his possession awaiting the demand, if, before it was maue, it was taken from him by fraud, duress, or some major and unlawful force which he was not able to resist, if when the demand is made he fails to pay over the fund.

Nor can the fact that in this case the failure of the depositary occurred after demand had been made affect or limit the scope of the decision, for by its terms the

liability to pay depends not upon the demand, but upon the ratification of the audit, for the obligation in respect to which the demand was made was not created by the demand, which necessarily called for the performance of an obligation existing when it was made. The sole effect of the demand was to furnish the basis for an action at law based upon the failure or refusal of the defendant to perform upon demand an existing obligation, nor had it any other possible connection with the obligation itself.

The general rule, and one that is consistent with the majority opinion, and indeed is conceded by it, is that a trustee, before the ratification of an auditor's account, is only liable upon the failure of a depositary if he has failed to exercise reasonable care in the selection of such depositary, or has failed to deposit the fund to his credit as trustee. That is stated as settled law in *Perry on Trusts and Trustees,* sec. 443, in these words: "A trustee may deposit money temporarily in some responsible bank or banking-house; and if he acted in good faith and with discretion, and deposited the money to a trust account, he will not be liable for its loss, as where the bank failed." And the reason for that rule is thus stated in *Estate of Law,* 144 Pa. 499, 22 A. 831:

"So, also, executors, trustees, or guardians will not be liable if, in the ordinary discharge of their duty, they deposit the assets temporarily in a bank, although the bank may fail. But the trustee must be careful to make the deposits in the name of the trust-estate, and not to his personal credit, and not to mix the trust funds with his own; otherwise he will be liable. *Com. v. McAlister,* 28 Pa. 486; *Rees v. Berrington,* 2 White & T. Lead. Cas. 986, 987. 'If the subject of the trust be money, it may be deposited for temporary purposes in some responsible banking-house, but in such a manner that the cestui que trust may follow the fund into the hands of the bankers; and it is no objection that the bank allows interest on the deposits. * * * If the trustee put the money to his own credit, and not to the separate account of the trust-

estate, or if he allow the drafts of another person to be honored, who draws upon the account and misapplies the money, the trustee will be personally liable for the consequences.' *Lewin, Trusts,* 417. Banks of deposit are a recognized necessity in the commercial world. A trustee who would continuously keep for any considerable length of time a large sum of money about his person or in his house, rather than deposit it for safe-keeping in a solvent and reputable bank or trust company, where all the precautions may be exercised for its safety, might justly be regarded as derelict in duty. No one would be accredited with the exercise of common prudence who would keep his own money in this way; and a trustee, as we have said, is held generally for such care and diligence as an ordinarily prudent man would exercise in the conduct of his own business."

In *Dalrymple v. Gamble,* 68 Md. 167, 11 A. 718, it was held that an executor was chargeable with interest on money which he failed to deposit but ought to have deposited in a bank. And in 14 L. R. A. 103, in a note to *Estate of Law,* there are collected a number of cases illustrating the application of that principle.

The principle that the final ratification of an auditor's account establishes beyond the reach of any collateral attack the fact that a trustee who is by the account charged with the possession of funds did in fact collect and possess them, and that he is obliged upon demand to pay over such funds to the distributees named in the audit, is too well established to require either argument or the citation of authority in support of it. But it is doubtful whether that principle goes any further than to estop the trustee from denying that he received the fund, or that the distributee is entitled to receive it, and those were the questions with which the court dealt in the Maryland cases cited in the majority opinion, and what was said in them by the court must be considered in connection with the questions which the court was deciding. And while the vague and often loose generalizations used in some of them lend themselves to the majority view,

when considered in connection with the facts to which they were applied, they have no such effect. It is true that the expressions quoted from *Lunham v. Blundell,* 27 L. J. Ch. 179, and *Wilkinson v. Bewick,* 4 Jur. (N. S.) 1010, two obscure English cases decided many years ago, have much the same sound; but upon the facts of those cases the decisions may well have turned upon whether the trustees had exercised due care and diligence in paying out funds distributed by the respective audits.

But the question here differs from those involved in the cases cited in the court's opinion in this, that in those cases what the court was called upon to decide was whether the trustee had ever collected or received the funds, and if he had, whether he could set up, in an action by a distributee based upon his refusal or failure to pay to such distributee the amount distributed to him, any matter adjudicated by the order ratifying the distribution account. In this case it is conceded that the trustee did collect and hold the fund, and that the audit was regular and correct in every respect and properly ratified. But the real question is whether the ratification of the auditor's report converted him at that very instant from a trustee to a debtor of the distributee, bound at all hazards to pay the money distributed by the account, and an insurer of its payment. I know of no case which has gone so far as that, and the cases where the question has been considered at all appear to stress some question of negligence in respect to the selection of a depositary or the length of time during which the fund was permitted to remain on deposit, or the failure or refusal of the trustee to perform within a reasonable time an order of court (47 *Century Dig., Trusts,* sec. 318; *Decennial Digests, Trusts,* 221; *Chancellor v. Chancellor,* 177 Ala. 44, 58 So. 423), or the manner in which the deposit was made.

And since it is established that until the ratification of the distribution account a trustee is only held to the exercise of a reasonable and ordinary care in keeping safe trust funds in his possession, *supra,* it would seem that he is entitled, according to both common experience

and common sense, to the same protection after the ratification until by the exercise of reasonable diligence he is able to distribute the money as directed by the account. It has been held to be culpable negligence for such an officer to keep in his manual possession substantial sums of money, and it would seem highly unjust and unreasonable to require him to incur after the ratification a risk which he is forbidden to incur before it. He received the money as a trustee, the bond was conditioned for the performance of his duties as a trustee, and necessarily the right of the plaintiff to recover is based upon some breach of the condition of the bond, and it is far from clear how a suit on a bond given to secure the faithful performance of his duties by a trustee can be maintained on the theory that the loss of which the plaintiff complains occurred after the termination of the trust, and after the trustee ceased to be such.

A more reasonable rule, and one that would seem more consistent with common practice and experience, would be to hold the trustee liable only for a failure to exercise ordinary care and reasonable diligence in distributing a fund after the identity of the distributees and the amount of their respective shares are fixed by the final ratification of a distribution account, and in keeping safe the fund until such distribution.

For those reasons, while for reasons stated above I concur in the conclusion reached by the court, I am unable to agree with the reasoning upon which it rests.

### Opinion on Motion for Reargument.

A reargument could not alter the decision in this case, for even on the view urged by the appellants, that the obligors on the bond could not be held liable except upon a jury's finding of lack of care on the part of the trustees, the judgment would still have to be affirmed because lack of care has been found by a jury, and, as stated in the original opinion, there was evidence to justify that finding. The contention now is on the circumstances which

would render continuation of the deposit a risk of the trustees. The court finds no sufficient reason for having the case reargued, but deems it desirable to add the following answer to one argument presented in a brief filed with the motion:

It is true that performance of an order for distribution will necessarily consume some time, varying in length with one case and another. In some cases, as when trustees are required to make out a large number of checks, when the distributees or some of them are not readily found, and in perhaps some other situations, the time may be long. In others, as in this case, only a brief time is needed. If, during the reasonably necessary time for the distribution, the fund, although deposited and preserved with all the requisite care, should be lost by bank failure or other cause beyond the control of the trustees, the loss would fall on the proposed distributees, or the *cestuis que trustent*. But if, on the other hand, the reasonably necessary time has passed, and the money has been demanded, as in this instance, and is still unpaid and left in the place of deposit, the trustees are then continuing to hold it, not at the risk of their *cestuis que trustent,* but at their own risk; and an action on the bond will lie against them and their sureties.

When a bank failure does, as suggested, occur so early as to prevent performance of the order of distribution which the trustees and their surety have undertaken to perform, relief from the order would be obtainable, but not by plea and defense in a common law court, in a suit on the bond, leaving the order of the equity court outstanding and not complied with; it would be obtainable only in the equity court itself, by revocation there of the forestalled order, with an order for such redistribution of remaining assets, if any, as might be made necessary by the loss. "When an audit disposing of trust money has been ratified, and the trustee has been ordered to pay out the funds as audited, the order as to him and his sureties has the force and effect of an adjudication *in rem*, and, if he fails to make payment and his bond be put

in suit, there are but two questions open for the jury, and these are: Has such an order been passed? Has the money been paid? The court's order ratifying the audit is absolutely binding on the trustee and his sureties unless reversed on appeal to this court, or revoked on proper proceedings in the court by which it was passed." *Ward v. State, use of Schlosser,* 111 Md. 528, 534, 75 A. 116, 118; *State v. Graham,* 115 Md. 520, 522, 523, 81 A. 31.